## UNITED STATES v. KAY.*
### No. 200.

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

*Writ of certiorari granted 57 S.Ct. 943, 81 L.Ed. —.

20

F. R. Serri, of Brooklyn, N. Y., for appellant.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith and James G. Scileppi, Asst. U. S. Attys., of Brooklyn, N. Y., of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The appellant was charged in an indictment with violations of section 1467 (a) and (e), 12 U.S.C.A. (Home Owners' Loan Act, 48 Stat. 128, as amended, 12 U.S.C.A. § 1461 et seq.). There were twenty-five counts, three of which were withdrawn during the trial. Appellant was convicted on two counts, 5 and 15, based on section 1467 (a), which charged that the appellant "for the purpose of influencing the action of the Home Owners' Loan Corporation * * * unlawfully, knowingly, wilfully and feloniously" made a false statement in writing to the corporation consisting of overstatements of the amounts due on mortgages upon the properties of persons applying for loans. Of the twenty counts based upon section 1467 (e), appellant was convicted upon six; four of these counts, 8, 14, 20, and 24, charged her with contracting to receive fees other than those

"authorized and required by the corporation," and counts 12 and 25, the unlawful receiving of such fees. The sentence imposed which was suspended on one of the eight counts, was imprisonment of a year and a day, the terms on all counts to run concurrently.

Notice of appeal and assignment of errors were filed June 1, 1936, and an order extending the time to file a bill of exceptions was granted June 30, 1936. Though this order is not included in the record, it is clear from later orders which purported to further prolong the period of extension that the bill of exceptions was not filed within the time specified by the order of June 30, and the appellant does not contend otherwise. The bill of exceptions was not settled and filed until October, 1936. The power to grant an extension resided with the trial judge, subject only to specific exceptions [U. S. v. Adamowicz, 82 F.(2d) 288 (C.C.A.2), cert. den. 298 U.S. 664, 56 S.Ct. 748, 80 L.Ed. 1388], and this power could only be exercised within a period of thirty days after taking the appeal [U. S. v. Ray, 86 F.(2d) 942 (C.C.A.2), cert. granted Feb. 8, 1937, 57 S.Ct. 435, 81 L.Ed. ——]. This is the requirement of Rule 9 of the Supreme Court Rules of Practice and Procedure in Criminal Cases (28 U.S. C.A. following section 723a). Although the appellant obtained one valid extension within the permissible period, the bill of exceptions was not settled and filed in due time, and we are therefore foreclosed from considering the errors that are assigned respecting the bill of exceptions. This is true notwithstanding any contrary stipulations of the parties or the ineffectual orders of the trial judge made subsequent to June 30 granting extensions. Therefore, in accordance with rule 8 (28 U.S.C. A. following section 723a), our consideration on this appeal is limited to the sufficiency of the indictment and the judgment of the court below. U. S. v. Adamowicz, supra.

In contesting the validity of the indictment, appellant raises the question of the constitutionality of the Home Owners' Loan Act of 1933, and we must therefore inquire into the powers relied upon for its enactment and the extent to which those powers have been exercised. The act was intended to supplement the Federal Home Loan Bank Act (47 Stat. 725 [12 U.S.C.A. § 1421 et seq. and notes]) by supplying direct relief to home owners. For this purpose, the Home Owners' Loan Corporation was organized with a capital stock which was not to exceed $200,000,000, and which was wholly subscribed for by the Secretary of the Treasury on behalf of the United States. To further finance its activities, the corporation was authorized to issue bonds originally in the amount of $2,000,000,000 but later increased to $4,750,-000,000, the bonds to bear interest at 4 per cent. and to be guaranteed both as to interest and principal by the United States.* For a period of three years after June 30, 1933, the corporation was authorized to exchange its bonds, in a limited amount, for mortgages and to pay, within limits, any accrued taxes, assessments, necessary maintenance and repairs, and incidental costs in cash. The maximum interest payable by the home owner is 5 per cent. If the mortgagee refuses to accept the bonds and the home owner is unable to obtain a loan through ordinary channels, the corporation is authorized to make limited cash advances at interest not to exceed 6 per cent. The corporation carries the indebtedness as a first lien for 15 years, amortized monthly, quarterly, semiannually, or annually as necessity requires. Also, bonds may be exchanged and cash advanced to redeem foreclosed property. The act only deals with homes valued at not over $20,000 and no single loan, whether in bonds or cash, may exceed $14,000.

In creating this governmental agency and investing it with the described functions, Congress relied on its power to tax, borrow, and appropriate public money. The power "to lay and collect Taxes * * * and provide for the * * * general welfare of the United States * * *" is explicitly conferred (article 1, section 8, clause 1, U.S.Constitution), and necessarily contains the implied power of appropriation. See Field v. Clark, 143 U.S. 649, 695, 12 S.Ct. 495, 36 L.Ed. 294. The power "to borrow money on the credit of the United States" is granted without express limitation (article 1, section 8, clause 2). See Legal Tender Cases, 110 U.S. 421, 444, 4 S.Ct. 122, 28 L.Ed. 204. In taxing and making appropriations for the general welfare, Congress is not con-

---

* Bonds issued prior to April 27, 1934, or issued thereafter pursuant to commitments outstanding on that date, were guaranteed only as to interest.

fined within the scope of the delegated powers but must merely act in furtherance of general or national as distinguished from local purposes. U. S. v. Butler, 297 U.S. 1, 65, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. And the power to borrow can be subject to no other or greater limitation.

The character of the legislation enacted by Congress over a span of years indicates what has been accepted to be the expenditure of public funds for a public purpose. Appropriations have been made for vocational rehabilitation (48 Stat. 389), for state reforestation and the promotion of timber crops (43 Stat. 653 [16 U.S.C.A. §§ 471, 499 note, 505, 515, 564 et seq.]), for the education of the blind (20 Stat. 468 [20 U.S.C.A. §§ 101 and note, 102, 104]), for the support of rural schools (39 Stat. 929 [20 U.S.C.A. § 11 et seq.]), for the promotion of agricultural extension work (38 Stat. 372 [7 U.S.C.A. § 341 et seq.]), for the creation of a bureau of home economics (46 Stat. 1271), for cod subsidies (1 Stat. 229), and bounties for sugar producers (26 Stat. 583; see U. S. v. Realty Co., 163 U.S. 427, 16 S.Ct. 1120, 41 L.Ed. 215), for the promotion of the welfare and hygiene of maternity and infancy (42 Stat. 224 [42 U.S.C.A. § 161 et seq.]). The ability to challenge this power thus exercised has, it is true, been severely circumscribed [Frothingham v. Mellon (Mass. v. Mellon) 262 U.S. 447, 43 S.Ct. 597, 67 L. Ed. 1078] but its extensiveness is none the less clear on that account.

█ The national public purpose embodied in the Home Owners' Loan Act of 1933 is evident even if it is our function to pass upon Congress' determination in that respect. As stated, the act was intended to afford direct relief to home owners and in this way to supplement the home loan bank system which would continue as a reserve system for home-financing private institutions. Sen.Rep. No. 91, 73d Cong. 1st Sess. The purpose of the act was not to induce the unloading of mortgages on the United States by way of obtaining a better rate of interest, for the act provides in various ways against this, but to relieve the distress of foreclosure. The estimated total of home mortgages in 1933 was $21,000,000,000 (73d Cong., 1st Sess. p. 4975), and the report of the House Ways and Means Committee on the earlier Federal Farm Loan Bank Act (H.R. No. 1418, 72d Cong. 1st Sess.) contains facts which

establish the national character of this legislation beyond question. For such a purpose, therefore, Congress created an agency wholly owned by the government in whose behalf the power to borrow and spend was to be exercised.

There are no obstacles here such as may inhere in situations where, in conjunction with the spending power, Congress seeks to exercise powers of eminent domain [U. S. v. Certain Lands in the City of Louisville, 78 F.(2d) 684 (C.C.A.2), appeal dismissed, 294 U.S. 735, 55 S.Ct. 548, 79 L.Ed. 1263]; nor is there an attempt to employ the taxing and spending power to accomplish prohibited ends as there was found to be in U. S. v. Butler, supra. For a limited period of time Congress merely facilitated loans to small home owners much as it did for the owners of farm land by the Farm Loan Act. See Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577.

█ The appellant contests the validity of section 1467 (a) and (e) under which the indictment was framed. Counts 5 and 15, based upon section 1467 (a) and upon which she has been found guilty, charge that she knowingly and wilfully made false statements in writing to the corporation for the purpose of influencing its action. We are concerned not with any question of proof but only whether the indictment charges an offense which Congress could and did validly create; and there is no sound reason why, in order to safeguard the lending system which it had established, Congress could not punish "whoever makes any statement, knowing it to be false for the purpose of influencing in any way the action of the Home Owners' Loan Corporation." The crime is sufficiently defined and was properly charged in this indictment. McClanahan v. United States, 12 F.(2d) 263 (C.C.A.7).

█ The other counts upon which the appellant was convicted and sentenced to terms to run concurrently with counts 5 and 15 charge that she had contracted to receive and actually did receive fees other than those "authorized and required by the Corporation" in violation of section 1467 (e). It is undoubtedly right to say that until the corporation defined the fees which could properly be charged the crime was too vague and indefinite. U. S. v. Willard, 8 F.Supp. 356 (D.C.Mich.). However, at the time that the appellant committed the acts charged the corporation had

already issued its regulations and defined the fees and charges which could validly be solicited and received. We must assume that it was sufficiently proved that the appellant violated section 1467 (e) as administered by the regulations.

Judgment affirmed.