William R. WALKER, on Behalf of himself and all other taxpayers of the State of Alaska, Appellant,

v.

ALASKA STATE MORTGAGE ASSOCIATION, Albert R. Vacura, Robert Petro, Donald Mellish, M. G. Gebhart, A. H. Romick, and the State of Alaska, Appellees.

No. 669.

Supreme Court of Alaska.

June 30, 1966.

John M. Conway, Atkinson, Wade & Conway, Anchorage, for appellant.

Warren C. Colver, Atty. Gen., Juneau, John K. Brubaker, Dist. Atty., Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

This is the second time that this case has reached us. On the first occasion the matter was remanded to the superior court because of dissatisfaction with the state of the record upon which the constitutional issues involved were determined on summary judgment. In our opinion in Ault v. Alaska State Mortgage Ass'n,[1] we said:

> We are not holding that summary judgment procedure in cases of this nature is unacceptable. We do hold that if summary procedure is employed in cases involving important public issues where any fact is in dispute the trial judge should not attempt to render a decision unless he is satisfied that the evidence, both pro and con, is sufficient to give him the necessary background of knowledge.[2]

Subsequent to our remand, a two day trial was held during which detailed statistical exhibits were admitted and the court heard testimony from ten witnesses who were primarily experts in the fields of banking, mortage financing and housing. Our review of the record produced at this trial convinces us that the superior court had sufficient evidence before it to intelligently determine the broad constitutional issues which were raised. At the conclusion of the trial the lower court entered findings of fact, conclusions of law and a judgment which upheld the constitutionality of the legislation which created the Alaska State

---

1. 387 P.2d 698 (Alaska 1963). Note after the matter was remanded to the superior court, the present plaintiff, William R. Walker, was substituted for the original plaintiff, John W. Ault.

2. Id. at 701–702.

Mortgage Association.[3] We affirm the superior court's judgment.

Our affirmance of the superior court's declaration of constitutionality of the Alaska State Mortgage Association was to a large extent foreshadowed by our decision in DeArmond[4] and our recent decision in Suber.[5]

The 1961 act which created the Alaska State Mortgage Association contains the legislature's statement that it is

the policy of the state to promote the health, safety, and welfare of its citizens by the creation of a body corporate and politic, to exist and operate for the purposes resulting from the conditions caused by the lack of a permanent secondary source of funds for housing financing, *thus providing additional financing secured by insured mortgages to persons, firms, or financial institutions who are unable to obtain such financing in the general market;* thereby improving and stimulating the distribution of investment capital for housing. These purposes are considered necessary and are public purposes for which public money may be spent. (Emphasis furnished.)[6]

To carry out this policy the Alaska State Mortgage Association was established as "a public corporation and government instrumentality within the Department of Commerce, but having a legal existence independent of and separate from the state * * *."[7] The act provided that the Asso-

ciation is to be governed by a five member board who are appointed by the governor. At the time this matter was heard in the superior court, the Board's membership consisted of "three members of the Board of Commissioners of the Alaska State Housing Authority, its executive director, and the commissioner of commerce."[8]

Among the powers which were specifically granted to the Association and are pertinent here is the power to:

purchase and sell, at its own discretion, mortgages insured by the Federal Housing Administration, or mortgages obtained by the division of veterans affairs, Department of Commerce, which have been assigned, sold or pledged to the association in return for cash, notes, bonds or debentures of the association; * * *.

* * * * * *

accept grants and subsidies from a federal or state agency, or a private person, and make agreements required as a condition to obtaining the grants and subsidies; * * *[9]

To enable the Association to enter the secondary financing field for housing mortgages, the act authorizes the Association to "issue negotiable bonds, notes and debentures in principal amounts the board considers necessary to provide sufficient funds for achieving its purposes, including the purchasing of home mortgages * * *."[10]

---

3. The Alaska State Mortgage Association was created by the enactment of SLA 1961, ch. 103, as amended, SLA 1962, ch. 97, as amended, SLA 1963, ch. 40 (AS 44.56.010–44.56.280).

4. DeArmond v. Alaska State Dev. Corp., 376 P.2d 717 (Alaska 1962).

5. Suber v. Alaska State Bond Comm., 414 P.2d 546, Opinion No. 344 (Alaska, May 19, 1966).

6. AS 44.56.010.

7. AS 44.56.020.

8. AS 44.56.030. Note: While this matter was pending before this court, AS 44.56.-

030 was repealed and re-enacted by SLA 1966, ch. 38, § 1 to read in part as follows:

The membership of the board of commissioners of the association shall consist of the four appointive members of the board of commissioners of the Alaska State Housing Authority and the commissioner of commerce. * * *

9. AS 44.56.090(8), (11).

10. AS 44.56.100. The remainder of this section of the act reads:
* * * the payment of interest on bonds of the association, establishment of reserves to secure the bonds, notes

In this appeal appellant questions the constitutionality of the legislation which created the Alaska State Mortgage Association on principally five grounds. Appellant initially contends that the act is unconstitutional in that it attempts to create an independent agency (which is not in fact within the Department of Commerce) in violation of article III, section 22 of the Alaska Constitution which provides:

All executive and administrative offices, departments, and agencies of the state government and their respective functions, powers, and duties shall be allocated by law among and within not more than twenty principal departments, so as to group them as far as practicable according to major purposes. Regulatory, quasi-judicial, and temporary agencies may be established by law and need not be allocated within a principal department.[11]

In the *DeArmond* case,[12] a similar contention of unconstitutionality was advanced as to legislation which created the Alaska State Development Corporation. In sustaining that legislation, we wrote:

We are not inclined to pass judgment on the means selected by the legislature to accomplish legitimate purposes unless they are clearly in violation of the constitution. In this case we believe the corporation is essentially what the legislature says it is: an instrumentality of the state within the Department of Commerce, with a legal existence separate from the

state and that no provision of section 22 of article III has been violated.[13]

The reasons which compelled this conclusion in the *DeArmond* case are also present in this case. Here, as in *DeArmond*, the act specifically provides that the Association's status is that of a public corporation within the Department of Commerce possessing a legal existence independent of and separate from the state. Despite this provision, appellant contends that the Association "is not subject to such control by the executive as to support a finding that the legislature has placed the Association firmly within the Department of Commerce." The thrust of appellant's argument is that the placing of the Association within the Department of Commerce is merely a "matter of form" and "is not determinative of whether Section 22 of Article III of the Constitution has been violated."

We find that substantially the same factors of executive control are present in this case which we found persuasive in *DeArmond* where we held that the Alaska State Development Corporation was within the Department of Commerce.

The Association is required to submit to the governor and the legislature a comprehensive annual report describing the operations, fiscal transactions, financial condition, and future plans of the Association.[14] The financial records of the Association are subject to annual audit by the legislative auditor.[15] Certified copies of the minutes of every meeting of the Association are

---

and debentures, and other expenditures of the association incident to and necessary or convenient to carry out its purposes and powers.

11. The superior court properly concluded that "the Alaska State Mortgage Association is not a regulatory, quasi-judicial or temporary agency of the State within the exceptions provided under Article III, Section 22, of the Constitution."

12. Supra note 4, 376 P.2d at 724–725.

13. Id. The act which established the Alaska State Development Corporation specifi-

cally provided that the "corporation is an instrumentality of the state within the Department of Commerce, but has a legal existence independent of and separate from the state." AS 44.59.010. Note: Almost the identical language has been used in AS 44.56.020 pertaining to the status of the Alaska State Mortgage Association.

14. AS 44.56.093. This section further provides that the governor "may prescribe the form of the report."

15. AS 44.56.096.

required to be sent to the governor.[16] Further, as in *DeArmond,* the Commissioner of Commerce has a permanent seat on the governing board of the Association which should "in the ordinary course of events, give him considerable influence on the board."[17] The Association's three board members from the Board of Commissioners of the Alaska State Housing Authority are appointed by the governor and serve at his pleasure.[18] Therefore, the governor is empowered to remove any member of the governing board of the Association at his pleasure.[19]

Also relevant is our observation in *De-Armond* [20] where we said:

The fact that the statute declares that the corporation shall have a legal existence independent of and separate from the state does not add weight to appellant's argument. This is nothing more than a declaration of the legal relationship that most corporations have with respect to their creators.

We, therefore, hold that the Alaska State Mortgage Association is within the Department of Commerce and that article III, section 22 of the Alaska Constitution has not been violated.

Appellant additionally contends that the members of the governing board of the Association were not appointed in accordance with the provisions of article III, section 26 of the Alaska Constitution which provides:

When a board or commission is at the head of a principal department or a regulatory or quasi-judicial agency, its members shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session, and may be removed as provided by law. They shall be citizens of the United States. The board or commission may appoint a principal executive officer when authorized by law * * *.

Our holding that the Association is within the Department of Commerce is dispositive of this issue. The superior court found that the Association's board members "were not confirmed by a majority of the members of the legislature in joint session as is required by Article III, Section 26 for members of boards at the *head of principal departments* of the State." [21] Since the board of the Association is not at the head

16. AS 44.56.045. AS 44.56.055 provides that:
    The attorney general is the legal counsel for the association. He shall advise the corporation in legal matters and represent it in suits.

17. AS 44.56.030. Note: Under SLA 1966, ch. 38, § 1 the Commissioner of Commerce still retains his permanent seat. The quoted language is from our opinion in DeArmond v. Alaska State Dev. Corp., supra note 4, 376 P.2d at 724.

18. AS 39.05.060. Under SLA 1966, ch. 38, § 1 there are now four board members from the Board of Commissioners of the Alaska State Housing Authority. The executive director of the Alaska State Housing Authority is no longer a member of the governing board of the Association.

19. See SLA 1966, ch. 38, § 1. Prior to the 1966 repeal and reenactment of AS 44.-56.030, the executive director of the Alaska State Housing Authority was appointed by, and served at the pleasure of the Board of Commissioners of the Alaska State Housing Authority. In this regard the superior court found that:

A member of or appointee to the Alaska State Housing Authority board is on notice that he is accepting a dual office and is subject to removal from both if he is unsatisfactory in either capicity.
    If the governor is dissatisfied with the executive director in either his capacity as a member of the Alaska State Housing Authority or the Alaska State Mortgage Association, he can assert his authority over the board members to effect the director's removal and, should they disregard his wishes, his alternative is to appoint members to the board who *will* appoint an executive director satisfactory to the governor.
The record supported these findings of the superior court.

20. Supra note 4, 376 P.2d at 724.

21. Appellees conceded that the Association's board members were not confirmed by a majority of the legislature in joint session as is required by article III, section 26 for members of boards at the head of principal departments of the state.

of the Department of Commerce, article III, section 26 of the Alaska Constitution does not govern the appointment of its members.[22]

Appellant next argues that the Association will not achieve a legitimate public purpose and that the use of public money and credit by the Association will violate article IX, section 6 of the Constitution of the State of Alaska. This section of our constitution provides:

No tax shall be levied, or appropriation of public money made, or public property transferred, nor shall the public credit be used, except for a public purpose.

■■ Relevant to the resolution of this issue are the following principles which were stated in the *DeArmond*[23] case:

At the outset we observe that the phrase "public purpose" represents a concept which is not capable of precise definition. We believe that it would be a disservice to future generations for this court to attempt to define it. It is a concept which will change as changing conditions create changing public needs. Whether a public purpose is being served must be decided as each case arises and in the light of the particular facts and circumstances of each case.

In determining the question presented this court adopts for its guidance the general rule, supported by the great weight of authority, *that where the legislature has found that a public purpose will be served by the expenditure or transfer of public funds or the use of the public credit, this court will not set* aside the finding of the legislature unless it clearly appears that such finding is arbitrary and

without any reasonable basis in fact. (Emphasis furnished.)[24]

In addition to the legislature's "public purpose" findings previously alluded to [25] in creating the Alaska State Mortgage Association, the legislature made the following specific findings:

(1) the lack of sufficient secondary marketing facilities for housing mortgages in Alaska is a deterrent to the entire economy of the state, and a condition which the legislature desires to remedy;

(2) inadequate funds and secondary marketing facilities for housing mortgages restrict the building of adequate housing and create conditions contrary to the public interest which threaten, or may threaten, the health, safety, welfare, comfort, and security of its citizens;

(3) the scarcity of available housing mortgage financing sources makes such a marketing facility both desirable and necessary and in the best interests of the public welfare;

(4) there is a definite need in the state for a secondary market facility for housing mortgages.[26]

In *Ault*[27] we held that the legislature's findings are controlling in the absence of a controversy questioning their validity. We further held that when such findings are questioned the court "must then decide whether the legislature's findings are arbitrary and without any reasonable basis in fact."[28]

After making detailed and extensive findings on this issue, the superior court held:

That the purposes for which the Association was formed are public purposes within the meaning of Article IX, Section

22. Appellant concedes that if it is found that the Association is within the Department of Commerce, then confirmation of the board's members in accordance with article III, section 26 is not required.

23. Supra note 4, 376 P.2d at 721.

24. To the same effect see Suber v. Alaska State Bond Comm., supra note 5, at 13.

25. See text accompanying note 6 supra. AS 44.56.010(b).

26. AS 44.56.010(a) (1), (2), (3), (4).

27. Supra note 1, 387 P.2d at 701.

28. See also Suber v. Alaska State Bond Comm., supra note 5, at 12, 13.

6, of the Constitution, State of Alaska, and that being such, Chapter 103, SLA 1961, as amended, is not in violation of said Article IX, Section 6.

We are of the opinion that the record supports the lower court's findings and conclusion that the Association was created for a public purpose within the intendment of article IX, section 6 of the Alaska Constitution. We hold the legislature's findings that the creation of the Alaska State Mortgage Association will fulfill a public purpose is not arbitrary or without any reasonable basis in fact. Housing (and its effect upon the health, safety, welfare, comfort and security of this state's citizens) as well as the economic climate of the state are legitimate legislative purposes. The legislature's findings embodied in AS 44.56.010(a) and (b) are supported by testimony which was elicited at the trial.[29]

Contrary to appellant's contention the record establishes that there is a need for additional secondary marketing facilities for housing mortgages in the State of Alaska. At the time of trial it was shown that 80 per cent of all mortgages in Alaska were insured by the Federal Housing Administration. In addition to this potential market for the Association, it was shown that the Division of Veterans Affairs of the State of Alaska had pending approximately 165 applications for loans (of which 115 were for home construction or improvement) totalling $1,790,000.00 which it could not process due to prior utilization of its available funds for outstanding loans. As was pointed out earlier, the Association is limited to the purchase and sale of mortgages insured by the Federal Housing Administration and mortgages obtained by the Division of Veterans Affairs.[30]

At the trial it was further established that there were two sources of secondary marketing facilities for housing mortgages in Alaska, namely private sources and the Federal National Mortgage Association.[31] It was further shown that the private institutional investors were handling practically all of the secondary financing on FHA insured mortgages in Alaska with heavy investment concentrations in the major populated areas of the state.[32]

At best appellant's witnesses testified that adequate secondary marketing facilities existed only for mortgages originating in the well settled areas of the state. The assumption underlying all of this testimony was the existence of a "capital surplus in the east."[33] Appellees' evidence clearly established the need for an additional secondary market facility for housing mortgages in the outlying areas of the state. There was also testimony adduced as to the beneficial effect such an additional facility would have in stimulating construction and in raising the standard of housing throughout the state. Additionally, there was testimony showing the economic feasibility of the Association's contemplated activities. We,

29. United States v. Kay, 89 F.2d 19 (2d Cir. 1937), rev'd, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607 (1938); Roan v. Connecticut Industrial Bldg. Comm'n, 150 Conn. 333, 189 A.2d 399 (1963); Green v. Frazier, 44 N.D. 395, 176 N.W. 11, aff'd, 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878 (1920); State ex rel. State Reclamation Bd. v. Clausen, 110 Wash. 525, 188 P. 538, 14 A.L.R. 1133 (1920).

30. Note 9 supra. Although the Division of Veterans Affairs also obtains business mortgages, the bulk of the agency's loans are in the home loan category. Under the scope of the act in question, the Association would be limited to the purchase and sale of housing mortgages obtained by the Division of Veterans Affairs.

31. The private source was described as consisting of eastern savings banks, federal savings and loan associations, union pension funds, and trust funds.

32. Due to the FNMA's higher discount rate and its own servicing of mortgages, this agency had only a small percentage of the secondary mortgage market in Alaska.

33. The act creating the Association contemplates the creation of a permanent secondary source of funds for housing financing (AS 44.56.010(b)), which would effectuate the purposes of the act in the event this private institutional surplus factor were to change.

therefore, hold that the purposes for which the Alaska State Mortgage Association was created are public purposes within the ambit of article IX, section 6 of the Alaska Constitution.

Before leaving this point, mention should be made of appellant's argument that the Association's activities will "adversely affect private sources providing capital at the present time." The answer to this contention is that the Association is limited to providing "additional financing secured by insured mortgages to persons, firms, or financial institutions *who are unable to obtain such financing in the general market.*" (Emphasis furnished.)[34] We cannot assume that the act will be administered by the Association's governing board in disregard of this statutory limitation.

Appellant also contends that the Association has received a loan and grant in violation of article IX, section 6 of the Alaska Constitution. At the trial it was shown that the Association had been granted $200,000.00 by the Alaska State Housing Authority and had accepted $10,000.00 of this grant to meet its organizational expenses.[35] The evidence also disclosed that the Association had borrowed $5,000.00 from the Office of the Governor. In light of our holding that the Association was created for a public purpose within the meaning of article IX, section 6 of the Alaska Constitution, we hold that such use of public grants and loans is constitutionally permissible.[36]

Appellant next contends that the debts which are contemplated to be incurred by the Association are debts of the state in violation of article IX, section 8 of the Constitution of Alaska. This portion of our constitution provides in part that:

No state debt shall be contracted unless authorized by law for capital improvements and ratified by a majority of the qualified voters of the State who vote on the question. * * *

As previously mentioned, the Association is authorized to issue negotiable bonds, notes and debentures to provide sufficient funds for the carrying out of its purposes. The 1961 act further provides that:

The state is not liable on notes, bonds or debentures of the association and the notes, bonds or debentures are not a debt of the state.[37]

In *DeArmond*, a similar contention was urged as to the bonds of the Alaska State Development Corporation.[38] In *DeArmond*,[39] we concluded that the funds realized through the sale of bonds which were backed only by the resources and credit of the corporation and which did not constitute debts of the state were not public funds. We are of the opinion that our holding in *DeArmond* is controlling here and conclude that the bonds, notes and debentures of the Association are not debts of the State of Alaska within the scope of article IX, section 8 of our constitution.[40]

34. AS 44.56.010(b).

35. AS 44.56.090(11), (12) empowers the Association to accept such grants.

36. DeArmond v. Alaska State Dev. Corp., supra note 4, 376 P.2d at 722.

37. AS 44.56.200.

38. AS 44.59.140(b) of the Alaska State Development Corporation Act provides:
The corporation may not pledge the credit or the taxing power of the state or its political subdivisions. The state and its political subdivisions are not liable for the debts of the corporation.

39. DeArmond v. Alaska State Dev. Corp., supra note 4, 376 P.2d at 722. See also Sigman v. Brunswick Port Authority, 214 Ga. 332, 104 S.E.2d 467 (1958); Orbison v. Welsh, 242 Ind. 385, 179 N.E.2d 727 (1962); Book v. State Office Bldg. Comm'n, 238 Ind. 120, 149 N.E.2d 273 (1958).

40. In reaching this conclusion we reject appellant's contention that despite the act's provision that the state is not liable upon the Association's indebtednesses and that the same do not constitute debts of the state, the provisions of AS 44.56.020

■ Appellant's final contention is that the act unconstitutionally delegates to the Association legislative authority to provide for public health and welfare.[41] Again we find that our prior decisions in *DeArmond* and *Suber* are dispositive of this issue.[42] We hold that the enabling legislation which created the Alaska State Mortgage Association is not an unconstitutional delegation of legislative power. The act's purpose is explicitly stated and the Association's powers and limitations are provided for specifically. The complexity of the subject of secondary marketing facilities for housing mortgages precludes a more detailed delegation.[43]

The superior court's judgment is affirmed.

and AS 44.56.250(a) create legally enforceable obligations. We do not construe these sections relied upon by appellee as imposing or creating any obligation, either legal or moral, upon the state to meet the Association's indebtednesses. See State ex rel. Thomson v. Giessel, 265 Wis. 185, 60 N.W.2d 873 (1953).

41. Alaska Const. art. II, § 1 states: "The legislative power of the State is vested in a legislature * * *." Article VII, sections 4 and 5 state that the legislature shall provide for the promotion and protection of public health and welfare.

42. See also Boehl v. Sabre Jet Room, Inc., 349 P.2d 585, 588 (Alaska 1960).

43. Suber v. Alaska State Bond Comm., supra note 5, at 20–21; DeArmond v. Alaska State Dev. Corp., supra note 4, 376 P.2d at 722–723.