**NATIONAL BANK OF ALASKA, a National Banking Association, and Alaska Bank of Commerce, a State Banking Association, Appellants,**

v.

**STATE of Alaska, DEPARTMENT OF REVENUE, Appellee.**

No. 5482.

Supreme Court of Alaska.

April 2, 1982.

---

Susan Wright Mason, Atkinson, Conway, Bell & Gagnon, Anchorage, for appellants.

Wilson L. Condon, Atty. Gen., Juneau, Amy J. Stephson, Asst. Atty. Gen., Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and SERDAHELY, Superior Court Judge.

SERDAHELY, Superior Court Judge.

The issue presented in this appeal is whether, for purposes of computing the business license fee or tax of banks under the Alaska Business License Act, AS 43.70.-010–.120, interest received by the banks on bonds issued by the Alaska State Housing Authority ("ASHA") and the Alaska Housing Finance Corporation ("AHFC") should be considered as "net income" of the banks within the meaning of the Act. We hold that it should.

The essential facts of this case are not in dispute. Appellants National Bank of Alaska ("NBA") and Alaska Bank of Commerce ("ABC") (hereinafter "banks") filed business license tax returns, or amended returns, which excluded from their taxable income interest earned on ASHA/AHFC bonds. Appellee State of Alaska, Department of Revenue (hereinafter "Department") audited the banks' returns and disallowed this exclusion.[1] Both banks filed letters of grievance with the Department, objecting to the Department's treatment of the bond interest.

On July 14, 1978, the Department held a hearing to review the similar claims of NBA, ABC and one other bank regarding the Department's treatment of ASHA and AHFC bond interest for business license tax calculation purposes.[2] The July 17, 1979 decision of the hearing officer, ultimately adopted by the Department, upheld the foregoing decisions of the Department's Audit Division with regard to NBA and ABC.

The banks then appealed the Department's final decision to the superior court, which affirmed the Department on July 11, 1980. This appeal followed.

1.  More specifically, on September 15, 1977, NBA filed its amended business license tax return for 1976. The amended return did not include in the taxable income interest derived from ASHA and AHFC bonds. NBA calculated that it was due a refund of $48,548.00. In late 1977, however, the Department of Revenue audited NBA's amended return, disallowed the bank's exclusion of the bond interest and recalculated NBA's refund as being only $19,-531.00.

   Likewise, ABC filed a 1976 business license tax return, which similarly excluded ASHA and AHFC bond interest from its taxable income.

ABC further filed amended returns for 1974 and 1975, which also excluded interest on the ASHA/AHFC bonds. Although the Department initially refunded $6,486 and $8,384 to ABC for 1974 and 1975, respectively, the Department subsequently disallowed ABC's exclusion of bond interest for 1974, 1975 and 1976, and assessed the bank an additional $32,895.00 in business license taxes for those years.

2.  The third bank involved in the administrative proceeding below, Alaska Statebank, is not a party to this appeal.

In resolving the issue presented by this appeal, we are required to construe three sets of statutes: AS 43.70.030(b), the portion of the Alaska Business License Act pertaining to the business license fee or tax for banks; AS 18.55.160 and AS 18.55.170, pertaining to ASHA bonds; and AS 18.56.-170(a) and AS 18.56.190(b), pertaining to AHFC bonds.

More particularly, AS 43.70.030(b) governs the computation and imposition of the business license fee or tax on banks, and provides in relevant part:

> The license fee for each national bank and state bank, trust company and savings and loan association is seven per cent of its net income. *Net income* means the taxable income of each taxpayer before net operating loss deduction and special deductions, computed as required under the Internal Revenue Code of the United States and *includes all other income including income from federal, state or municipal obligations.*

(Emphasis added.)

AS 18.55.160, in turn, sets forth the limitation of liability on bonds issued by the Alaska State Housing Authority, and provides that such bonds are not general obligations of the state or other governmental subdivisions.[3] AS 18.55.170 exempts interest income earned on ASHA bonds from "taxes", and provides as follows:

> *Bonds and other obligations of the authority* are declared to be issued for an essential public and governmental purpose and are public instrumentalities and, *together with interest on them and income from them, are exempt from taxes.*

(Emphasis added.)

In like manner, AS 18.56.170 defines the limitation of liability on bonds issued by the Alaska Housing Finance Corporation, and specifies that the credit of the state is not pledged to secure such bonds.[4] AS 18.56.-190(b) confers certain tax exempt status on the AHFC bonds, and provides:

> All obligations issued under this chapter are hereby declared to be issued by a body corporate and public of the state and for an essential public and governmental purpose, and *the obligations, and the interest and income on and from the obligations,* and all fees, charges, funds, revenues, income and other money pledged or available to pay or secure the payment of the obligations or interest on the obligations *are exempt from taxation* except for transfer, inheritance, and estate taxes.

(Emphasis added.)

In construing the foregoing statutory provisions, and in reviewing the superior court's decision in the administrative appeal below, we are initially presented with the question of whether the lower court applied the correct standard of review to the Department's decisions. Citing *State, Department of Revenue v. Debenham Electric*

---

3. AS 18.55.160 provides as follows:

    The members of the authority and any person executing the bonds are not liable personally on the bonds by reason of their issuance. The bonds of the authority are not a debt of the state or a political or municipal corporation or other subdivision of the state and each bond shall so state on its face. Neither the state nor a political or municipal corporation or other subdivision of the state other than the authority is liable on the bonds, nor are the bonds payable out of funds or properties other than those of the authority. The authority may not pledge the faith of the people of the state for a loan or obligation. Bonds of the authority are not a debt, indebtedness or the borrowing of money within the meaning of any limitation or restriction on the issuance of bonds contained in the constitution or laws of the state.

4. AS 18.56.170(a) provides as follows:

    Obligations issued under the provisions of this chapter do not constitute a debt, liability or obligation of the state or of any political subdivision of the state or a pledge of the faith and credit of the state or of any such political subdivision but are payable solely from the revenues or assets of the corporation. Each obligation issued under this chapter shall contain on its face a statement that the corporation is not obligated to pay it nor the interest on it except from the revenues or assets pledged for it and that neither the faith and credit nor the taxing power of the state or of any political subdivision of the state is pledged to the payment of the principal of or the interest on the obligation.

*Supply Co.*, 612 P.2d 1001, 1003 n.6 (Alaska 1980), the superior court gave "some weight" to the Department's interpretation of the term "net income" under the Alaska Business License Act.[5]

The banks contend that the lower court erred in applying the "some weight" standard, pursuant to *Debenham*, to the Department's interpretation of the foregoing statutory provisions, and should have independently construed the statutes. The Department, on the other hand, argues that the trial court properly accorded "some weight" to the agency decision, and that in any event, the Department's statutory construction must be upheld even if the lower court were to have independently construed the statutes.

There are two standards under which this court has reviewed agency determinations on questions of law. One is the reasonable basis standard under which deference is given to the agency's determination so long as it is reasonable; the other is the independent judgment standard under which the court makes its own determination of the meaning of the statute involved and need not follow the agency's construction even if it is one of several reasonable readings. *Kodiak Western Alaska Airlines, Inc. v. Bob Harris Flying Service, Inc.*, 592 P.2d 1200 (Alaska 1979); *North Slope Borough v. LeResche*, 581 P.2d 1112 (Alaska 1978); *Union Oil Company of California v. State, Department of Revenue*, 560 P.2d 21 (Alaska 1977).

■ The reasonable basis standard is used where the question at issue implicates special agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions. *Kodiak Western Alaska Airlines, Inc. v. Bob Harris Flying Service, Inc.*, 592 P.2d 1200, 1203 n.7 (Alaska 1979). The independent judgment standard is used when agency expertise or the determination of fundamental policies are not involved. *North Slope Borough v. LeResche*, 581 P.2d 1112, 1115 (Alaska 1979); *Union Oil Company of California v. State, Department of Revenue*, 560 P.2d 21, 23 (Alaska 1977). However, even under the independent judgment standard this court has noted that the court should give some weight to what the agency has done, especially where the agency interpretation is longstanding. *State, Department of Revenue v. Debenham Electric Supply Co.*, 612 P.2d 1001, 1003 n.6 (Alaska 1980).

■ In the instant case, our task involves the interpretation of three statutory provisions in order to determine whether bond interest should be included within the taxable income of banks for the purpose of determining the bank's business license fee or tax. This issue does not require administrative policy decisions or special agency expertise. Rather, the issue at hand presents a question of pure statutory construction. Therefore, the independent judgment standard of review is appropriate. The Department's treatment of the issue involved in this case was not of a longstanding or even consistent nature.[6] Thus, while

---

5. In *State, Department of Revenue v. Debenham Electric Supply Co.*, 612 P.2d 1001, 1003 n.6 (Alaska 1980), this court noted that although a court is not bound by an administrative interpretation of a statute, the court "should give some weight to the administrative interpretation, and especially so if it is longstanding."

In this case, the superior court stated that "I cannot see that he (the hearing officer) was clearly in error. I think the decision was an arguable one." Citing *Debenham*, the lower court continued to observe that "unless the Court in this case is able to say statutory construction by the Department of Revenue is wrong, is erroneous, it should adhere (to the interpretation)."

6. In the case at bar, the Department's proposed statutory construction was novel, and was inconsistently applied to ABC's business license tax returns for the years 1974, 1975 and 1976. Thus, although the Department initially allowed ABC to exclude from its taxable income the interest earned on ASHA and AHFC bonds for the years 1974 and 1975, and further actually refunded money to ABC pursuant to the bank's business tax returns filed for those years, the Department nevertheless subsequently reversed its interpretation, disallowed the bond interest exclusions, and recalculated ABC's business license tax liability for those two years.

the Department's position should be considered, it cannot play a strong role in our review. While it is, of course, impossible to quantify the weight the agency's interpretation was given by the superior court in according it "some weight", such an exercise is unnecessary since on appeal from an administrative appeal to the superior court we review the merits of the administrative determination directly except to the extent that de novo proceedings have taken place in the superior court. *See State v. Lundgren Pacific Construction Co., Inc.*, 603 P.2d 889 (Alaska 1979).

■ Turning to the primary question of statutory interpretation, the starting point of our analysis is AS 43.70.030(b), which, as noted, imposes a business license tax or fee on banks in the amount of seven per cent of the bank's *"net income"*. The enactment defines "net income" in a two-fold manner: first, as meaning "taxable income" for federal income tax purposes, and secondly, as "includ(ing) all other income including income from federal, state or municipal obligations." The banks contend that interest on ASHA and AHFC bonds does not fall within the foregoing definition of "net income", while the Department, and lower court, concluded that the bond interest must be included within the definition.

To begin with, the parties do not dispute, and we agree, that interest on the ASHA and AHFC bonds does not fall within the first part of the definition of "net income", since such interest is not "taxable income" for federal income tax purposes. Section 103(a)(1) of the Internal Revenue Code expressly excludes from "gross income" of a federal taxpayer interest on the obligations of any "political subdivision" of a state.[7] ASHA and AHFC, in turn, are "political subdivisions" within the meaning of the Internal Revenue Code.[8] Thus, interest on

the ASHA and AHFC bonds is not, under the Code, taxable gross income, and hence, does not fall within the first part of the definition of "net income" in AS 43.70.-030(b). If ASHA and AHFC bond interest constitutes taxable income of the banks for business license tax purposes at all, then it must fall within the second part of the statutory definition of "net income", i.e., "all other income" of the taxpayer, such as "income from federal, state or municipal obligations."

Throughout the proceedings in this case, the parties have vigorously disputed whether the ASHA and AHFC bonds were "state obligations" within the meaning of the business license tax statute. The banks argue that the issue is resolved by the express language of the ASHA and AHFC statutes. AS 18.55.160 provides that "the bonds of the authority (ASHA) are not a debt of the state . . . ." Similarly, AS 18.56.170(a) provides that "obligations issued under the provision of this chapter (AHFC) do not constitute a debt, liability or obligation of the state . . . ."[9] Based on such language, the banks contend that the bonds are not "state obligations", but rather, are obligations of the issuing public corporations, ASHA or AHFC only. In support of their contention, the banks rely upon this court's holdings in other cases that similar bonds, i.e., bonds issued by the Alaska State Mortgage Association ("ASMA") and the Alaska State Development Corporation ("ASDC"), were not "state debts" and that the revenue derived therefrom was not "public funds". *See Walker v. Alaska State Mortgage Association*, 416 P.2d 245 (Alaska 1966); *DeArmond v. Alaska State Development Corp.*, 376 P.2d 717 (Alaska 1962).

The Department argues that the term "state obligations" must, as a result of logic and legislative intent, be construed more

---

**7.** Internal Revenue Code Sec. 103(a)(1) (26 U.S.C. Sec. 103(a)(1)) provides:

   Sec. 103. Interest on certain governmental obligations
    (a) General Rule.—Gross income does not include interest on—
    (1) the obligations of a State, a Territory, or a possession of the United States, or any

political subdivision of any of the foregoing, or the District of Columbia . . . .

**8.** *See also* AS 18.55.020 and .030 (ASHA), and AS 18.56.120 (AHFC).

**9.** The full texts of these statutory provisions are set forth in footnotes 3 and 4, above.

broadly than to mean only the general obligation bonds or treasury obligation bonds of the State, and should include the obligations of state agencies or public corporations, such as ASHA and AHFC, as well.

We agree with the banks' construction of the term "state obligations" and decline to construe the concept as broadly as urged by the Department. Like the ASMA and ASDC bonds in *Walker* and *DeArmond*, the ASHA and AHFC bonds in the instant case are not, by the very terms of AS 18.55.160 and AS 18.56.170(a), state debts backed by general treasury funds. As this court stated in *Walker*:

> In *DeArmond*, we concluded that the funds realized through the sale of bonds which were backed only by the resources and credit of (ASDC) and which did not constitute debts of the state were not public funds. We are of the opinion that our holding in *DeArmond* is controlling here and conclude that the bonds, notes and debentures of (ASMA) are not debts of the State of Alaska within the scope of article IX, Section 8 of our constitution.

416 P.2d at 253 (footnotes omitted). We thus conclude that the ASHA and AHFC bonds are not "state obligations" for purposes of the business license tax act.

Ultimately, if the ASHA and AHFC bond interest is to be considered as "net income" of the banks for purposes of determining their business license tax liability pursuant to AS 43.70.030(b), such interest must fall within the meaning of the statutory phrase "all other income". We hold that it does.

As we read AS 43.70.030(b), the legislature intended to define the term "net income" broadly for business license tax calculation purposes. "Net income" was thus legislatively defined as including *both* a taxpayer's "taxable income," minus certain deductions, from the standpoint of federal income tax law, *as well as* "all other income," such as otherwise tax exempt income from federal, state and municipal obligations. We interpret the "all other income" category as an attempt by the legislature to reach those types of income, such as bond interest, which are not otherwise subject to federal income taxation. As the superior court in this case correctly concluded, to hold otherwise would be to render the language of the second part of the statutory definition of "net income" in AS 43.70.-030(b) meaningless and mere surplusage. This we decline to do.

With respect to the construction of the several statutory provisions at issue herein, the banks further argue that the interest on the ASHA and AHFC bonds should not be included within the term "net income" because AS 18.55.170 and AS 18.56.190(b), statutes otherwise exempting such bond interest from taxation, are "specific" statutes while AS 43.70.030(b), the Alaska Business License Act, is a "general" statute. The banks then cite the rule of statutory construction which holds that specific statutes must control over general statutes, when the two enactments cannot be harmonized.[10]

The Department, on the other hand, argues that the canon of statutory construction, holding that a more specific statute must prevail over a general one, is inapplicable here because the various statutory provisions at issue can be harmonized. The Department further argues that in any event, AS 43.70.030(b) is at least as specific, if not more specific, than the terms and policy of the tax exemption provisions of the ASHA and AHFC statutes, AS 18.55.-170 and AS 18.56.190(b).

■■■ We find the general/specific rule of statutory construction to be unhelpful in this context, and agree with the Department that the rule is inapplicable here because the various statutory provisions can be harmonized. As this court noted in *State, Department of Highways v. Green*, 586 P.2d 595, 602 (Alaska 1978):

---

10. *See* 2A Sutherland, *Statutes and Statutory Construction* Sec. 51.05 (4th ed. Sands 1973); *Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72, 76 (1961); *Sprague v. State*, 590 P.2d 410, 415 n. 14 (Alaska 1979); *Hafling v. Inlandboatmen's Union of the Pacific*, 585 P.2d 870, 877 n.22 (Alaska 1978); *State, Department of Highways v. Green*, 586 P.2d 595, 602 (Alaska 1978); *In Re: Estate of Hutchinson*, 577 P.2d 1074, 1075 (Alaska 1978); *People v. Breyer*, 139 Cal.App. 547, 34 P.2d 1065, 1066 (1934).

(T)he rule of construction favoring specific provisions over general provisions need not be invoked unless it is impossible to give effect to both provisions.

To the same effect, this court explained in *Hafling v. Inlandboatmen's Union of the Pacific*, 585 P.2d 870, 878 (Alaska 1978), that:

> All statutes relating to the same subject matter should be read together as a whole in order that a total scheme evolves which maintains the integrity of each act and avoids ignoring one or the other.

Under our statutory construction of the various statutory provisions at issue here, we have given full force and effect to the language "all other income" in the second half of the definition of "net income" in AS 43.70.030(b), while at the same time leaving intact, for general taxation purposes, the tax-exempt status conferred on ASHA and AHFC bonds by AS 18.55.170 and AS 18.56.-190(b). The foregoing statutory provisions are not, in our opinion, in irreconcilable conflict with one another. We therefore decline to invoke and apply the general/specific statutory construction rule to this case.[11]

■ Finally, our construction of the Alaska Business License Act and the related ASHA and AHFC statutes, and our holding that ASHA and AHFC bond interest must be included within the meaning of "net income" of banks for purposes of determining the banks' business license tax liability, eliminate the possibility of any unlawful discrimination, either direct or indirect, against federal obligations or securities.

An unlawful tax discrimination problem arises when federal securities are accorded less favorable treatment by state tax laws than is given to state or private securities. *See, e.g., Schuylkill Trust Co. v. Commonwealth*, 296 U.S. 113, 56 S.Ct. 31, 80 L.Ed. 91 (1935). AS 43.70.030(b) includes within the term "net income" "all other income including income from federal ... obligations." To the extent that all federal obligations are subject to the business license tax, including those obligations afforded a specific tax exemption by Congress, the statute must equally impose the tax on state obligations and bonds, which are otherwise tax exempt pursuant to specific state tax exemptions, in order to avoid any unlawful discrimination against federal securities.[12] This, we believe, is accomplished by our construction of the business license statute.

In construing an analogous Connecticut corporation business tax statute, the Connecticut Supreme Court in *Connecticut Bank and Trust Co. v. Tax Commissioner*,

---

11. The banks also argue that the legislative history of AS 18.55.170 and AS 18.56.190(b) demonstrates the legislature's intent that interest on such bonds are to be tax exempt for all purposes. In support of their contention, the banks cite a House Committee Report concerning the ASHA Bill, AS 18.55.170, along with the transmittal letter from then-Governor Egan to the Chairman of the House Rules Committee in connection with this legislation. *See* Report of House Commerce Committee on House Bill # 404, 1966 House Journal 224–25; Letter of William A. Egan, Governor, to Chairman, House Rules Committee, February 10, 1966, reprinted in 1966 House Journal Supplement # 7 at 16. With respect to the legislative history of the AHFC statute, AS 18.56.190(b), the banks rely upon the transmittal letter from the Governor to the Speaker of the House with respect to that proposed legislation. *See* Letter from William A. Egan, Governor, to Speaker of the House, February 9, 1971, reprinted in 1971 House Journal 208–09.

Unhappily, the legislative history concerning the enactments in question in this case is too limited and inconclusive in nature to provide us with useful guidance. The House Report and Governor's transmittal letters provide no more insight into the legislature's intention than the express language of the ASHA and AHFC enactments themselves. Thus, we are required to construe the statutes in accordance with ordinary principles of statutory construction, and without the benefit of clear and controlling legislative history. *See State, Department of Natural Resources v. City of Haines*, 627 P.2d 1047, 1049 n.6 (Alaska 1981).

12. This is the conclusion of the February 29, 1960 Informal Opinion of the Attorney General, issued in connection with the then-proposed 1960 amendment to AS 43.70.030(b). That amendment, later enacted, added the sentence containing the "net income" definition at issue here. *Compare* Ch. 43, Section 5(b), SLA 1949 *with* Ch. 101, Section 1, SLA 1960.

 

178 Conn. 243, 423 A.2d 883 (1979), was also concerned about the possibility of unlawful discrimination against federal securities. There, the Connecticut Supreme Court similarly concluded that the inclusion of otherwise tax exempt state bond interest within the taxpayer's income subject to the Connecticut corporation business tax was required to avoid prohibited discrimination against federal securities. The Connecticut high court thus explained:

> Moreover, since our corporation business tax provisions explicitly include in a corporation's measure of net income interest received from tax-exempt federal securities, our conclusion that the state exemption provisions in issue are not broad enough to render the interest from state and local bonds non-includable in the measure of net income under chapter 208 is consistent with federal law prohibiting discrimination against federal securities " 'which diminish(es) . . . the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit'."

423 A.2d at 886 (citations omitted). We thus conclude that the interest on the ASHA and AHFC bonds in question here must be included within the banks' "net income" under AS 43.70.030(b) in order to avoid any unlawful discrimination against federal securities.

For the foregoing reasons, we hold that the ASHA and AHFC bond interest must be included within the meaning of the banks' "net income" pursuant to AS 43.70.-030(b) for purposes of calculating the banks' tax liability under the Alaska Business License Act. The decision of the superior court below is AFFIRMED.

COMPTON, J., not participating.

CONNOR, Justice, dissenting.

Unlike my colleagues, I find the rule favoring specific provisions over general provisions to be useful, and in fact determinative, in the context of this case.

AS 43.70.030(b) renders taxable "all other income including income from federal, state or municipal obligations." As to income from government obligations the scope of this provision is total and plenary. On the other hand, AS 18.56.170(a) and AS 18.56.-190(b) cover only two definite types of obligations. Those provisions render such obligations exempt from taxes of any kind.[1] Within their specific scope those provisions are all encompassing and do not imply any exceptions. Their language could hardly be more plain.

Thus, if we are to harmonize these statutes, we should hold that the ASHA and AHFC bonds are carved out as exceptions to the "all other income" language of AS 43.70.030(b).

It was obviously the intention of the legislature to give ASHA and AHFC obligations a preferred position in the financial marketplace. That intention is not effectuated by an interpretation which excludes banks from the beneficent provisions of the two exemption statutes.

For the reasons given, I would reverse.

1.  AS 18.56.190(b) does permit transfer, inheritance and estate taxes. Under the *expressio unius est exclusio alterius* maxim, it should be doubly clear that income taxation of these bonds is prohibited.