R. N. DeARMOND, on behalf of himself and all other taxpayers of the State of Alaska, Appellant,

v.

ALASKA STATE DEVELOPMENT CORPORATION, Robert A. Baker, Maurice Kelliher, John T. Kelsey, Lawrence Meath, M. E. Monagle, William G. Moran, A. H. Romick, and the State of Alaska, Appellee.

No. 285.

Supreme Court of Alaska.

Dec. 7, 1962.

Robert A. Boochever, of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellant.

Edward Starin, of Preston, Thorgrimson, Horowitz, Starin & Ellis, Seattle, Wash., George N. Hayes, Atty. Gen., State of Alaska, John E. Havelock, Deputy Atty. Gen., Juneau, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

The constitutionality of certain functions proposed to be performed by the Alaska State Development Corporation is questioned in this appeal. Before discussing the legal questions raised we shall outline generally the purpose, powers and duties of the corporation.

The corporation came into being through an act of the state legislature.[1] It has for its purpose the creation of "an instrumentality of the state to develop, stimulate, and advance the business prosperity and economic welfare of Alaska and its citizens". These objectives according to the act are to "be accomplished by providing critically needed development loans * * to all types of business activity" for the purpose of strengthening the economy of the state, enlarging "the employment opportunities" and enhancing the "standard of living and general welfare" of its citizens.[2]

The corporation is to be a public one, an instrumentality of the state within the Department of Commerce, but with a legal existence independent of and separate from the state.[3] The act specifically provides that the corporation

"may not pledge the credit or the taxing power of the state or its political sub-

---

1. S.L.A.1962, ch. 52 (AS 44.59).
 The original act creating the corporation is contained in S.L.A.1961, ch. 135. This act was amended by S.L.A.1962, ch. 52 which changed the numbering as well as the wording of most of the sections. In this opinion we shall cite the section number of S.L.A.1962, ch. 52 where the amended section may be found. Citations to the Alaska Statutes soon to be published are supplied in parentheses.

2. S.L.A.1962, ch. 52, § 48 (AS 44.59.430) states:
 "Purpose. The purpose of this Act is to create an instrumentality of the state to develop, stimulate, and advance the business prosperity and economic welfare of Alaska and its citizens. This shall be accomplished by providing critically needed development loans to encourage and assist the wholesome development of new business and industry in Alaska and to rehabilitate and expand existing business and industry. By providing development loans to all types of business activity, whether of an industrial, agricultural, or recreational nature, the economic stability of the state will be strengthened, the employment opportunities of its citizens enlarged, and their standard of living and general welfare enhanced."

3. S.L.A.1962, ch. 52, § 2 (AS 44.59.010).

divisions. The state and its political subdivisions are not liable for the debts of the corporation".[4]

and that:

"Appropriations and loans from the state general fund necessary for the initial operation of the corporation are authorized." [5]

The corporation can not commence its loan activities until it has received at least $1,500,000 from the sale of class A and B certificates and until this sum has been received, all funds from the sale of class A and B certificates are to be held in trust.[6]

It is authorized to sell a maximum of $15,000,000 in class A certificates and $3,000,000 in class B certificates. The maximum interest allowable on class A certificates is five percent a year; on class B certificates six percent a year. Each borrower is required to accept class C certificates in the amount of five percent of his development loan; these certificates to draw interest at a rate to be determined by the board of directors.[7] The funds represented by class C certificates are a reserve for loan losses.[8] The corporation is exempt from all taxes and assessments in the state. The certificates, their transfer, and their income are exempt from taxes and assessments.[9]

An appropriation of $150,000 from the general fund was made to the corporation as a loan, to be reimbursed to the general fund when the surplus of the corporation makes this possible. The surplus existing in a previous loan made to the State Development Bank was transferred to the corporation as an additional loan to be reimbursed to the general fund when corporate surplus permits.[10]

Plaintiff commenced this action on behalf of himself and all other taxpayers of the State of Alaska, naming as defendants the corporation, the individual members of the board of directors and the state. A declaratory judgment was requested declaring that the acts creating the corporation and appropriating funds to be loaned to it were in violation of various provisions of the Alaska Constitution. The defendants answered and cross-petitioned for declaratory judgment. Both sides filed trial briefs or memoranda in support of their legal positions. At the trial the plaintiff offered no evidence and moved for summary judgment or in the alternative for judgment on the pleadings. Seven witnesses testified on behalf of the defendants and documentary evidence was introduced. The trial court denied plaintiff's motions for summary judgment, judgment on the pleadings and for injunctive relief and dismissed his complaint. Judgment was entered for the defendants on their cross-petition declaring that the acts of the legislature were constitutional and valid; that the corporation was validly organized and existing and possessed the powers conferred upon it by the legislature; that the revenue bonds proposed to be issued will constitute valid obligations of the corporation when issued and sold; that the issuance and sale of the bonds will be in the public interest; that the funds realized from the sale of the bonds will be used for a public purpose; that in enacting chapter 135, S.L.A.1961 and chapter 52, S.L.A.1962 the legislature was exercising and acting pursuant to the power vested in it by article VII, section 5 and article VIII, sections 1, 2, 4 and 5 of the Alaska Constitution; that chapter 147, S.L.A.1961 and chapter 161, S.L.A.1962 were valid and constitutional and that the money appropriated thereunder constitutes a loan from the general fund of the state to the corporation and will be used for a public purpose; that the corporation was not a principal department of the state within the meaning of article III, section 22 of the constitution, but a temporary agency

4. S.L.A.1962, ch. 52, § 15 (AS 44.59.140 (b)).

5. S.L.A.1962, ch. 52, § 21 (AS 44.59.190).

6. S.L.A.1962, ch. 52, § 26 (AS 44.59.240).

7. S.L.A.1962, ch. 52, § 22 (AS 44.59.200 (d)).

8. Ibid.

9. S.L.A.1962, ch. 52, § 33 (AS 44.59.300).

10. S.L.A.1962, ch. 161.

within the provisions of said article and section; that chapter 135, S.L.A.1961 and chapter 52, S.L.A.1962 provide adequate standards and guides to the corporation for making development loans and that the exemption of the corporation from taxes and assessments and exempting its obligations, their transfer and the income therefrom from taxes and assessments are valid, constitutional provisions of the acts. Appellant has appealed claiming that error was committed as to all of the trial court's findings that support the judgment.

The uncontradicted testimony of witnesses holding high positions in the Alaska state government and in the banking industry of the state established that of the total working force in Alaska, between fifty and sixty percent were engaged in government occupations (including military) as compared with a ratio of fifteen percent generally in the United States; that less than one percent of the working force was engaged in agriculture as compared to eight to ten percent in the United States as a whole; that employment generally is highly seasonal and that of a total working force of 70,000 the unemployed during 1960 averaged 7,900; that as a result of the seasonal nature of employment in Alaska the state's indebtedness to the Unemployment Compensation Fund is $8,765,000 and overdue. The uncontradicted testimony further established that agriculture, the meat products, food processing, grazing and fattening, dairying, fur farming, fish by-products, base metals and the tourist industries offer many opportunities for development; that, if these industries and resources were developed, Alaska's unique employment problems would be alleviated to an extent; that the banking industry in Alaska, because of limited funds, has generally restricted loans to short term revolving commercial credit; that banking funds available for development loans or long term loans are very limited; and that the corporation could assist measurably in stimulating and developing the economy by providing long term development loans.

*Public Purpose.*

Appellant's first point is that the appropriation of funds for the corporation and the issuance of debenture certificates by the corporation constitutes the transfer of public funds and the use of public credit for other than a public purpose, in violation of article IX, section 6 of the Alaska Constitution which states:

"No tax shall be levied, or appropriation of public money made, or public property transferred, nor shall the public credit be used, except for a public purpose."

At the outset we observe that the phrase "public purpose" represents a concept which is not capable of precise definition. We believe that it would be a disservice to future generations for this court to attempt to define it. It is a concept which will change as changing conditions create changing public needs. Whether a public purpose is being served must be decided as each case arises and in the light of the particular facts and circumstances of each case.[11]

In determining the question presented this court adopts for its guidance the general rule, supported by the great weight of authority, that where the legislature has found that a public purpose will be served by the expenditure or transfer of public funds or the use of the public credit, this court will not set aside the finding of the legislature unless it clearly appears that such finding is arbitrary and without any reasonable basis in fact.[12]

Encouraging and assisting the wholesome development of new business

11. Wilmington Parking Authority v. Ranken, 34 Del.Ch. 439, 105 A.2d 614, 619 (1954); see City of Juneau v. Hixson, Opinion No. 93, 373 P.2d 743, 747 (Alaska 1962), where it was held to be unwise to attempt to provide an abstract definition of the phrase "capital improvement" for similar reasons.

12. In re Opinion of the Justices, Del., 177 A.2d 205 (1962); People of Puerto Rico v. Eastern Sugar Associates, 156 F.2d

and industry in Alaska and rehabilitating and expanding existing business and industry are legitimate legislative purposes. The testimony of witnesses thoroughly informed in their respective fields shows that beyond doubt many areas of the economy of Alaska could be expanded and others developed if sufficient capital were available to finance long term development loans. The testimony also establishes that the result of such development would be a reduction in the cost of living and an alleviation of the peculiar seasonal unemployment problems, to the benefit of all Alaskans. We are of the view that the announced purpose of the act has a sound basis in fact and that the dominant purpose is a public one.

In view of the foregoing we find no merit in appellant's argument that the appropriation of $150,000 to the corporation constitutes an appropriation or transfer of public funds to other than a public purpose. The act specifically provides that the appropriation is a loan to be reimbursed to the general fund when corporate surplus permits. An identical reimbursement proviso was attached to the transfer of the balance of the fund previously appropriated to the State Development Bank. Appellant's amended answer disclaims any pretense to authority to expend the appropriation for other than organizational and administrative expenses. There is no evidence in the act of a legislative intent to permit any part of the appropriation to be loaned. In fact, the act specifically provides that the corporation may not commence its loan activities until it has received at least $1,-500,000 from the sale of class A and B certificates. The loan to the corporation permits it to organize and administer its activities until it has accumulated sufficient funds from private sources to commence serving the public purpose for which it was created. It is true that public funds have been transferred to the corporation in the form of a loan, but since we have found

316, 323 (1st Cir.), cert. denied, 329 U.S. 772, 67 S.Ct. 190, 91 L.Ed. 664 (1946).

that the corporation is serving a public purpose within the meaning of article IX, section 6 of the constitution, such use of public funds is permissible.

We likewise find no merit in appellant's argument that the issuance of the debenture certificates by the corporation constitutes the transfer of public funds and the use of public credit for other than a public purpose.

Class A and B negotiable certificates are to be sold to the public in order to accumulate funds with which to make development loans. These certificates are backed only by the resources and credit of the corporation.[13] The act specifically prohibits the corporation from pledging the credit or the taxing power of the state.[14] The form of revenue bond adopted by the board of directors of the corporation provides therein:

"This bond shall not be deemed to constitute a debt of the State of Alaska or a pledge of the faith and credit of the State of Alaska, but shall be payable solely from the special fund provided therefor from revenues of the Corporation. The issuance of this bond shall not directly or indirectly or contingently obligate the State of Alaska to levy or to pledge any form of taxation whatever therefor."

No public funds are being transferred to the corporation other than the loans just mentioned. The funds realized from the sale of certificates will come from private sources. The credit of the state is not being pledged. Even though we have found that the corporation's activities will serve a public purpose, it is clear enough that its objectives must be accomplished without the use of public funds and state credit. No violation of the constitution has been shown.

*Improper Delegation of Authority.*

Appellant next urges that the act is unconstitutional as being an unlawful

13. S.L.A.1962, ch. 52, § 22 (AS 44.59.200).

14. Note 4 supra.

delegation to the corporation of legislative authority.[15] His argument is that the legislature's direction that development loans shall be made to assist new business and industry and to rehabilitate and expand existing business and industry, includes all business and industry, and establishes no standards by which the corporation is to determine to whom and under what conditions a loan shall be granted, leaving unlimited discretion in the corporation.[16]

Before considering appellant's argument the underlying purpose of the act should be reviewed in the light of testimony received during the hearing. The testimony established that a ready market exists in and outside of Alaska for many of its available resources and their by-products. If these markets could be supplied by Alaska industry every resident would receive direct benefits in the form of reduced cost of living and greater and seasonally balanced employment opportunities. The capital necessary to finance business and industry in the development of these resources must be made available on a long term basis. The resources of the Alaska banking industry are not sufficient to provide long term development loans to any appreciable extent. The purpose of the act is to create a source of funds, supplied by private capital, to finance resource development on a long term basis.

It was not necessary, nor would it have been practicable, for the legislature to have attempted to provide guides or standards for determining which business or industry should be eligible for a development loan with any greater certainty than was done. The expressed purpose of the act is to provide long term financing to all business and industry, whether new or existing, where the loan is critically needed, not otherwise readily available and the making of the loan would be economically advantageous to the state and the general public welfare.

■ It is our view that the statement of purpose contained in section 1[17] and the general limitations on loans contained in section 50[18] particularly the requirement of section 50(b) that before approving a development loan the board shall consider the purpose and make only loans that are economically advantageous to the state and the general public welfare, supply sufficient standards to guide the board in adopting regulations and procedure for loan policy as required by section 51.[19], [20]

15. Article II, § 1 of the Alaska Constitution states:
 "The legislative power of the State is vested in a legislature consisting of a senate with a membership of twenty and a house of representatives with a membership of forty."

16. See 16 C.J.S. Constitutional Law § 133 (1956) discussing the general rule that a legislature may delegate its non-legislative functions and confer discretion in the administration of the law, but may not delegate purely legislative powers in the absence of constitutional authorization.

17. Note 2 supra.

18. S.L.A.1962, ch. 52, § 43 (AS 44.59.390) states:
 "General Limitations on Loans. (a) In making development loans, the board shall consider the proposed collateral, the integrity and the management ability of the borrower, and the borrower's past and prospective earnings.

 "(b) Before approving a development loan, the board shall consider the purpose of the loan. The board may make only loans that are economically advantageous to the state and the general public welfare.

 "(c) The board may make a development loan to a responsible borrower only if other credit is not readily available on reasonable terms. Before granting a development loan, the board shall determine, so far as it is reasonably possible, that the first opportunity to grant the loan is given to banking or financial institutions in the state."

19. S.L.A.1962, ch. 52 § 44 (AS 44.59.400):
 "Regulations for Loans. The board may adopt regulations for loan policy and procedure, except that a regulation may not conflict with an indenture agreement or a provision of this Act."

20. American Power & Light Co. v. Sec. & Exch. Comm., 329 U.S. 90, 105, 67 S.Ct. 133, 91 L.Ed. 103, 116 (1946).

*Independent Agency Aspect.*

It is next claimed that the act creating the corporation is unconstitutional because it attempts to create an independent agency not within any of the principal departments of the state in violation of section 22 of article III of the constitution which states:

"All executive and administrative offices, departments, and agencies of the state government and their respective functions, powers, and duties shall be allocated by law among and within not more than twenty principal departments, so as to group them as far as practicable according to major purposes. Regulatory, quasi-judicial, and temporary agencies may be established by law and need not be allocated within a principal department."

The act specifically provides that the "corporation is an instrumentality of the state within the Department of Commerce, but has a legal existence independent of and separate from the state."[21]

Appellant points out that the Commissioner of Commerce is only one member of the seven man board of directors, that he has no control over the decisions of the board and that no one in the state government may direct the decisions of the corporation or veto its actions. From these premises appellant argues that the corporation is not "within" the Department of Commerce or any of the other principal departments of the state government.

Appellant's conclusions are not persuasive. The fact that the commissioner has a permanent seat on the board of directors by statute should,[22] in the ordinary course of events, give him considerable influence on the board. The other six members of the board are appointed by the governor and serve at his pleasure.[23] The commissioner's official status as a cabinet officer should enhance his influence with the board, even though in the final analysis his is only one vote out of seven. While no single official of the state government has the power to direct particular decisions of the board, the statute provides authority for the governor to remove all or any part of the board of directors at his pleasure.[24]

The board of directors is required by the act to submit a comprehensive annual report to the governor and the legislature;[25] the financial records are to be audited annually by or under the supervision of the legislative auditor[26] and the state bank examiner is required to examine the corporation's records annually.[27] The corporation is temporary in that, after payment of its obligations or securing their payment, it may be dissolved by a majority vote of the board, although the dissolution cannot become effective until approved by the legislature.[28]

The fact that the statute declares that the corporation shall have a legal existence independent of and separate from the state does not add weight to appellant's argument. This is nothing more than a declaration of the legal relationship that most corporations have with respect to their creators.

It is true that the Commissioner of Commerce can not dictate the decisions of the board. Nor can any other state official. The legislature carefully provided that one-half of the board membership shall be active in the banking business and that the other half shall have extensive knowledge of financial matters.[29] It is quite apparent that the legislature intended that the board be free from outside control in making decisions on particular loans. Otherwise considerable control over the corporation is retained in the executive branch.

 We are not inclined to pass judgment on the means selected by the legis-

21. S.L.A.1962, ch. 52, § 2 (AS 44.59.010).

22. S.L.A.1962, ch. 52, § 4 (AS 44.59.030).

23. Ibid.

24. Ibid.

25. S.L.A.1962, ch. 52, § 16 (AS 44.59.150).

26. S.L.A.1962, ch. 52, § 17 (AS 44.59.160).

27. Ibid.

28. S.L.A.1962, ch. 52, § 47 (AS 44.59.420).

29. S.L.A.1962, ch. 52, § 4 (AS 44.59.030).

lature to accomplish legitimate purposes unless they are clearly in violation of the constitution. In this case we believe the corporation is essentially what the legislature says it is: an instrumentality of the state within the Department of Commerce, with a legal existence separate from the state and that no provision of section 22 of article III has been violated.

*Tax Exemption.*

Lastly, appellant contends that the act, in exempting the corporation from all taxes and assessments and in exempting the debenture certificates and their transfer and income from taxation, violates section 4 of article IX of the constitution which states:

"The real and personal property of the State or its political subdivisions shall be exempt from taxation under conditions and exceptions which may be provided by law. All, or any portion of, property used exclusively for non-profit religious, charitable, cemetery, or educational purposes, as defined by law, shall be exempt from taxation. Other exemptions of like or different kind may be granted by general law. All valid existing exemptions shall be retained until otherwise provided by law."

Appellant's conclusion can only be supported by an application of the rule of *ejusdem generis* to the second and third sentences of the section. This is a rule frequently used in the construction of constitutions and briefly stated is: Where the intent of the wording under consideration is not otherwise clear, general words, which follow particular words, are presumed to relate only to things of the same kind or class as the particular words.[30]

In applying this rule appellant reasons that the general words of the third sentence of the section allowing "Other exemptions of like or different kind * * *", follow the second sentence which grants exemptions "for non-profit religious, charitable, cemetery, or educational purposes * * *"; that "other exemptions" must therefore relate to things of the same kind or class as the named exemptions and that since the tax exemptions granted to the corporation and to the debenture certificates are not of this class, they are void.

We do not agree. In our view the second sentence only serves to emphasize the alternative wording of the following sentence wherein it is provided that other exemptions of *like* or *different* kind may be granted by general law. We believe the word "like" refers to the named exemptions in the preceding sentence and that "different" was intended to clearly indicate that the legislature was not to be bound by the rule of *ejusdem generis* and was free to grant other exemptions even though they might not be of the same kind or character as those named.

The foregoing opinion disposes of all of the nineteen points on appeal raised by appellant with the exception of Nos. 11, 12 and 14. Since these points were not briefed we conclude that appellant has conceded or abandoned them.[31] Finding no error, the amended findings and the judgment are affirmed.

30. Nephi Plaster & Mfg. Co. v. Juab, 33 Utah 114, 93 P. 53, 56, 14 L.R.A.,N.S., 1043 (1907).

31. Pollastrine v. Severance, Opinion No. 108, 375 P.2d 528 (Alaska 1962); Veal v. Newlin, Inc., Opinion No. 53, 367 P.2d 155, 157 (Alaska 1961).