COMTEC, INC., Appellant,

v.

**MUNICIPALITY OF ANCHORAGE**
**d/b/a Anchorage Telephone**
**Utility, Appellee.**

No. S–685.

Supreme Court of Alaska.

Dec. 13, 1985.

B. Richard Edwards and Robert G. Casey, Law Offices of B. Richard Edwards, Anchorage, for appellants.

Gary C. Tucker, Asst. Mun. Atty., and Jerry Wertzbaugher, Mun. Atty., Anchorage, Michael L. Glaser and Ronald J. Jar-

vis, Gardner, Carton & Douglas, Washington, D.C., for appellee.

Before RABINOWITZ, C.J., and BURKE, COMPTON, MATTHEWS and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### INTRODUCTION

In November, 1983, Comtec, Inc., filed a complaint against the Anchorage Telephone Utility alleging that its lease, rental, and sale of customer telephone equipment was an unlawful use of public funds in violation of article IX, § 6 of the Alaska Constitution. Following cross motions for summary judgment, Judge Johnstone granted summary judgment in favor of Anchorage Telephone. For the purposes of summary judgment, the parties agreed that there were no genuine issues of material fact. We affirm Judge Johnstone's decision.

### THE FACTS

The Municipality of Anchorage provides telephone services through the Anchorage Telephone Utility. Anchorage Telephone provides two kinds of services. First, it provides Anchorage with transmission services over telephone lines and exchanges. Second, it sells, leases, and rents equipment for use on its customers' premises, known as "CPE" (customer premises equipment). This equipment includes telephone instruments, answering machines, computers, multiline key systems, private branch exchanges, and other devices that plug into the transmission system. The municipality supports Anchorage Telephone's CPE business from two sources of funds: (1) revenues from the sale, lease, or rent of CPE, and (2) revenues from non-recourse (revenue) bonds.

Because of decisions by the Federal Communications Commission, the CPE market is now deregulated. Deregulation has meant that anyone, not just Anchorage Telephone, can offer CPE to consumers. Consequently, a competitive CPE market now exists. Comtec, Inc., is a CPE competitor. Comtec argues that Anchorage Telephone is using public money and credit to market CPE for a non-public purpose in violation of article IX, § 6 of the Alaska Constitution. Article IX, § 6 provides that:

> No tax shall be levied, or appropriation of public money made, or public property transferred, nor shall the public credit be used, except for a public purpose.

### NO VIOLATION OF ARTICLE IX, § 6

We hold that the marketing of CPE fulfills a public purpose. Because a public purpose exists, we do not decide whether the funds used to market CPE are public money or credit under article IX, § 6.

In cases of this kind we generally defer to the legislature's or, here, the municipality's, judgment as to what constitutes a public purpose.[1] In *DeArmond v. Alaska State Development Corp.*, 376 P.2d 717, 721 (Alaska 1962), we said that:

> [T]his court adopts for its guidance the general rule, supported by the great weight of authority, that where the legislature has found that a public purpose will be served by the expenditure or transfer of public funds or the use of the public credit, *this court will not set aside the finding of the legislature un-*

---

1. We have found article IX, § 6 satisfied in a wide variety of contexts. *See Lake Otis Clinic, Inc. v. State,* 650 P.2d 388 (Alaska 1982) (state aid to private hospitals fulfills a public purpose); *Wright v. City of Palmer,* 468 P.2d 326 (Alaska 1970) (bonds issued to encourage industrial development fulfill a public purpose); *Suber v. Alaska State Bond Committee,* 414 P.2d 546 (Alaska 1966) (plan to provide mortgage relief to owners of homes destroyed by earthquake satisfies a public purpose); *Walker v.* *Alaska State Mtg. Ass'n.,* 416 P.2d 245 (Alaska 1966) (Alaska State Mortgage Association, which promotes housing, fulfills a public purpose by promoting the general welfare); *Lien v. City of Ketchikan,* 383 P.2d 721 (Alaska 1963) (purpose of hospital did not become non-public just because the city turned it over to a private organization); *DeArmond v. Alaska State Development Corp.,* 376 P.2d 717 (Alaska 1962) (creation of Development Corp. to promote business growth fulfills a public purpose).

*less it clearly appears that such finding is arbitrary and without any reasonable basis in fact.*

(emphasis added, citations omitted). And in *Wright v. City of Palmer,* 468 P.2d 326, 331 (Alaska 1970), we stated that:

The role of the courts in matters of this kind is relatively limited. Our function is not to determine whether, as prudent burghers, we might think this plan wise. [Citation omitted] *The test which we must apply is whether the plan is so unreasonable as to transgress the limitations of our constitution. If the plan of action were plainly foolhardy, or if it amounted to the pledging of assets without any discernible benefit, we might be persuaded to strike down the plan.*

(emphasis added).

Applying these principles, we do not find that the municipality's decision to provide CPE through Anchorage Telephone is "arbitrary and without any reasonable basis in fact" or is "so unreasonable as to transgress the limitations of our constitution" such that it is "plainly foolhardy" or "without any discernible benefit."

■ First, by providing CPE through Anchorage Telephone the municipality promotes *access.* The municipality points out that unlike private providers of CPE, Anchorage Telephone must (1) answer to the legislators in the Anchorage Assembly and the members of the Alaska Public Utilities Commission,[2] and (2) conform to the requirements of the Anchorage Municipal Code. These political controls mean that consumers have an additional forum, besides the private marketplace, in which to express their concerns about the development and sale of CPE. It is reasonable for the municipality to conclude that this benefits the public.

■ Second, by providing CPE the municipality promotes *convenience.* The municipality observes that consumers who prefer to, or must, deal with only one telephone company for all their communications needs, e.g., obtaining both CPE and transmission services, may do so. Sickness, disability, or job demands may also make it impossible for some to shop the market for CPE. By providing CPE and transmission services through one outlet, e.g., Anchorage Telephone, the municipality seeks to minimize the inconvenience of obtaining communications equipment and services. We do not believe that this policy is arbitrary or without a reasonable factual basis.

■ Finally, the municipality fulfills a need for *reliability* by providing CPE. Many might founder in the recent flood of deregulation without Anchorage Telephone's safe harbor. Due to the long history of service—over fifty years—by Anchorage Telephone as the sole telephone company in Anchorage prior to deregulation, the public is accustomed to dealing only with Anchorage Telephone.[3] In the wake of deregulation, however, the public must now

---

2. Comtec argues that because the FCC pre-empted state regulation of CPE, as discussed in *Computer & Communications etc. v. F.C.C.,* 693 F.2d 198 (D.C.Cir.1982), *cert. denied,* 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983), the Commission "would not have jurisdiction to force the municipality to solve any CPE problem." This argument misses the point. While the Commission may not have authority to set rates for private CPE vendors, it still has authority to set rates for Anchorage Telephone. The Anchorage Municipal Code provides that: "Telecommunication service and equipment will be provided at the rates, fees and charges established by the Anchorage Telephone Utility and which have been duly adopted and approved by the Alaska Public Utilities Commission...." AMC 26.60.010.

3. Comtec does not dispute that Anchorage Telephone has been the only telephone company until recently. Instead it argues that:

There is no reasonable basis in fact to conclude that customers are accustomed to dealing with the municipal telephone system for CPE. Indeed, the record advances a different conclusion. The record shows that no fewer than 25 vendors of CPE exist in the Anchorage market and that the market is highly competitive.

Because it was not until very recently that these competitors could enter the market due to regulation, we reject this argument.

deal with about twenty-five competitors in Anchorage to obtain CPE. Comtec's own expert witness stated that change was occurring so fast in the communications industry that even "the North America Telecommunications Association has been unable to keep track as who to [sic] is coming in and who is going out of the market because there are so many, and they're changing so rapidly." The expert quoted a publication which said: "Revolutionary new products and technological brake throughs [sic] on a weekly basis. Rumors of gluts, price wars, and shakeouts. The pace has been furious—absolutely mindboggling." Then he said: "And make no mistake: there's much more volatility and uncertainty to come."

If the experts' minds are boggled and uncertain, it is reasonable to think that consumers will also have difficulties in the unregulated CPE market. Undoubtedly, many of the new products on the market represent improvements over those produced under the old system. But Anchorage Telephone is available for those who will not or cannot test the waters.[4] The municipality argues that it is providing the public with an alternative which is "identifiable, reputable, a substantial and dependable utility which has a long-standing presence in the community of Anchorage." Nothing in the record indicates that such a belief is arbitrary and without any reasonable basis in fact.

The trial court's decision granting defendant's summary judgment motion and denying plaintiff's cross motion is AFFIRMED.

---

**4.** At least one court has said that the F.C.C. intended that phone companies like Anchorage Telephone would continue to compete and participate in the CPE market. *See United States v. Western Electric Co.,* 531 F.Supp. 894, 901 (D.N. J.1981).