Robert M. WEBER, Appellant,

v.

KENAI PENINSULA BOROUGH,
Appellee.

No. S–8404.

Supreme Court of Alaska.

Oct. 15, 1999.

Robert M. Weber, pro se, Wasilla.

Holly B. Montague, Assistant Borough Attorney, Kenai Peninsula Borough, Soldotna, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Robert Weber appeals from a superior court order upholding the Kenai Peninsula Borough's decision to finance a privately owned gas-line extension by creating a utility special assessment district. Weber raises constitutional challenges to the assessment district's creation and to his property's mandatory inclusion in it. Because the borough created the assessment district for the purpose of financing a gas line that provides public benefits and because the construction specially benefitted Weber's property, we hold that the borough acted constitutionally. Accordingly, we affirm.

## II. FACTS AND PROCEEDINGS

In May 1993 property owners in the East Scout Lake Loop area of the Kenai Peninsula Borough (the borough) petitioned to form a utility special assessment district to finance a gas line extension. After a public hearing on the petition the borough assembly established the East Scout Lake Loop Utility Special Assessment District (assessment district) to finance the gas line. At another public hearing, the borough appropriated $220,000 to fund the project. The borough hired Enstar, a public utility that is a privately-owned, for-profit corporation, to construct the gas line. The borough's agreement with Enstar provided that Enstar would assume ownership of the gas line. The borough then authorized Enstar to proceed with construction. Upon completion of the gas line in 1993, the borough confirmed the assessment roll, established the funding mechanism for the assessment district, and set $1,330 as the amount to be paid by each property owner within the district.

The approved assessment roll included Weber's property, which was then owned by Weber's predecessor in interest, Karen Mills. Mills appealed the borough's decision to the superior court, which affirmed the assessment. In the interim, Weber had replaced Mills as the property's owner.

Weber appeals the superior court's decision.

### III. DISCUSSION

#### A. Standard of Review

■ Because the superior court acted as an intermediate court of appeal, we independently review the borough's decision.[1] We apply our independent judgment to constitutional issues.[2] But when a question of law involves the borough's expertise, we review the decision under the rational basis standard.[3] Likewise, we apply the rational basis standard when the borough's application of the law to the facts implicates administrative expertise or involves fundamental policy determinations.[4] Under this standard, we defer to the borough's determination as long as it is supported by the facts and has a reasonable basis in law.[5]

#### B. The Borough's Creation of a Special Assessment District to Finance the Construction of a Gas Line Was for a "Public Purpose" as Required by Article IX, Section 6 of the Alaska Constitution.

Article IX, section 6 of the Alaska Constitution provides, "No tax shall be levied, or appropriation of public money made, or pub-

lic property transferred, nor shall the public credit be used, except for a public purpose." In the superior court, Weber argued that the borough's creation of the special assessment district violated this provision because it benefitted only Enstar and served no public purpose. Relying primarily on our decision in Suber v. Alaska State Bond Committee,[6] the superior court ruled that the creation of the assessment district was valid because the gas line served a legitimate public purpose. Weber contends that the superior court misinterpreted Suber.

In Suber we considered the constitutionality of a mortgage adjustment plan intended to aid mortgagors and mortgagees of one- to four-family dwellings that had been damaged by the March 27, 1964, earthquake.[7] There we upheld the state's program on the basis that the "paramount purpose of the Program is the relief of those saddled with economic hardship. Any private advantage, such as to those holding mortgages on the damaged or destroyed homes, is incidental and subordinate."[8]

■ Weber argues that Suber is inapplicable to this case because the private benefit to Enstar was "the sole benefit"—and not merely an incident—of the utility assessment.[9] He relies exclusively on the fact that Enstar not only received all assessment proceeds, but owns and operates the gas line. Weber emphasizes that the borough created the assessment district specifically to pay Enstar for its costs in building the gas line. But these assertions do not compel the conclusion that the gas line was constructed for

1. See CH Kelly Trust v. Municipality of Anchorage, Bd. of Equalization, 909 P.2d 1381, 1382 (Alaska 1996).

2. See Walker v. Walker, 960 P.2d 620, 622 (Alaska 1998).

3. See Rose v. Commercial Fisheries Entry Comm'n, 647 P.2d 154, 161 (Alaska 1982).

4. See Hammer v. City of Fairbanks, 953 P.2d 500, 504 (Alaska 1998).

5. See Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co., 746 P.2d 896, 903 (Alaska 1987).

6. 414 P.2d 546 (Alaska 1966).

7. See id. at 548–51.

8. Id. at 552.

9. Weber also disputes the lower court's characterization of the assessment as a lien on the property rather than a charge to the landowner by noting that if the landowner does not pay the special assessment the borough can foreclose on the property. This fact is irrelevant to whether a public purpose is served by the borough's financing of a gas line. Nor is the fact that Weber owns a coal business, which may vie with the natural gas utility for business, relevant to the public purpose query.

a purely private purpose or that Enstar alone benefitted from the special assessment.

We presume that a municipal legislative assessment decision is valid.[10] We thus assume that the creation of the assessment district is constitutional unless Weber proves otherwise. As we held in *City of Wasilla v. Wilsonoff*,[11] we will reverse a special assessment decision only upon proof of " fraud or conduct so arbitrary as to be the equivalent of fraud, or [where a decision is] so manifestly arbitrary and unreasonable as to be palpably unjust and oppressive." [12]

Weber has presented no evidence that the borough's decision to construct the gas line was motivated by considerations other than the public interest. In fact, the borough did not initiate the formation of the assessment district; rather, the landowners—by over a seventy-percent vote—petitioned the borough to create the assessment district. Weber has not shown that the borough created the assessment district to assist Enstar. To the contrary, the record shows that the borough based its decision on the public's stated need for a new gas line.

The fact that Enstar is a private company is irrelevant to whether the gas line serves a public purpose. In *Milheim v. Moffat Tunnel Improvement District*,[13] the United States Supreme Court held that "the test of the public character of an improvement is the use to which it is to be put, not the person by whom it is to be operated." [14] And we similarly held in *Lien v. City of Ketchikan* [15] that "[t]he test of whether a public purpose is

being served does not depend on the … nature of the [entity] that will operate the … property, but upon the character of the use to which the property will be put." [16]

In *Lien* we held that the City of Ketchikan's funding of the construction of a community hospital served a public purpose.[17] We concluded that the city did not alter that purpose simply by turning the hospital's operation over to a religious order.[18] Specifically, we recognized that "[t]he moneys used to construct the Ketchikan hospital were spent for a public purpose, since a community hospital serves the general welfare. That purpose does not become non-public when the hospital is turned over to a [private organization] for operation, rather than being operated by the city itself." [19] Though *Lien* involved a non-profit religious order rather than a for-profit corporation, its reasoning applies here.

*Lien* thus establishes that Enstar's status as a private corporation and its ownership of the gas line do not foreclose a finding that the gas line will provide a public service. The issue turns not on who is being paid but on what will be provided.[20] And there are no rigid categories establishing public versus private purposes; in each case, the analysis of public purpose must be made within the context of specific facts.[21]

Because the existence of a public purpose turns on a case-specific factual determination involving agency expertise, we must defer to the borough's view of the

**10.** *See Property Owners · Ass'n of the Highland Subdivision a Portion of USMS 769, Ketchikan, Alaska v. City of Ketchikan*, 781 P.2d 567, 572 (Alaska 1989); *City of Wasilla v. Wilsonoff*, 698 P.2d 656, 657 (Alaska 1985).

**11.** 698 P.2d 656 (Alaska 1985).

**12.** *Id.* at 658 (quoting *Kissane v. City of Anchorage*, 159 F.Supp. 733, 737 (D.Alaska 1958)); *accord Property Owners*, 781 P.2d at 573.

**13.** 262 U.S. 710, 43 S.Ct. 694, 67 L.Ed. 1194 (1923).

**14.** *Id.* at 719, 43 S.Ct. 694.

**15.** 383 P.2d 721 (Alaska 1963).

**16.** *Id.* at 722.

**17.** *Id.*

**18.** *Id.*

**19.** *Id.*

**20.** *See id.* at 722.

**21.** *DeArmond v. Alaska State Dev. Corp.*, 376 P.2d 717, 721 (Alaska 1962)("Whether a public purpose is being served must be decided as each case arises and in the light of the particular facts and circumstances of each case."); *accord Wright v. City of Palmer*, 468 P.2d 326, 330 (Alaska 1970); *Walker v. Alaska State Mortgage Ass'n*, 416 P.2d 245, 251 (Alaska 1966).

public good.[22] We will overturn the borough's decision only if it is "arbitrary or without any reasonable basis in fact or is so unreasonable as to transgress the limitations of our constitution such that it is plainly foolhardy or without any discernible benefit."[23]

■ Under this deferential standard, we have accepted a broad range of purposes as legitimate public purposes.[24] Here, it was not "plainly foolhardy"[25] for the borough to conclude that Enstar's natural gas line will provide a "discernible benefit."[26] To the contrary, the record reveals that the borough reasonably could have concluded that the gas line would provide public benefits. The construction of the gas line enables any property owner within the assessment district to access natural gas through Enstar. As the superior court observed, gas line proponents cited several benefits of having a natural gas line, including comfort and safety, the economy of natural gas, as well as increased property values. Granted, the borough never made an express determination that it was establishing the assessment district for the public good. But neither the public purpose clause nor our case law requires that it do so. Weber's contention that only Enstar benefit-

ted from the improvement is no more than "mere conjecture,"[27] and we reject it accordingly.

We thus conclude that the borough's creation of the assessment district does not violate the public purpose clause of the Alaska Constitution.

### C. The Gas–Line Construction Specially Benefitted Weber's Property.

■ Weber next argues that because his property received no special benefits, the assessment was a taking without just compensation in violation of the due process clauses of the United States and Alaska constitutions. He relies on the 1898 case of *Village of Norwood v. Baker*,[28] in which the United States Supreme Court held that property in a special assessment district must be specially benefitted by the subject of the assessment.[29] Alaska has adopted this special benefit requirement.[30] But Weber fails to show that his land was not benefitted by the gas line.

Proponents of the gas line wrote to the borough about the benefits of having access to the gas line. These benefits included having a safe,[31] convenient,[32] reliable,[33] environ-

22. See *Wright*, 468 P.2d at 331; *accord Comtec, Inc. v. Municipality of Anchorage*, 710 P.2d 1004, 1006 (Alaska 1985).

23. *Comtec*, 710 P.2d at 1006 (internal quotations omitted) (quoting *DeArmond*, 376 P.2d at 721, and *Wright*, 468 P.2d at 331).

24. See, e.g., *Lake Otis Clinic, Inc. v. State*, 650 P.2d 388, 394 (Alaska 1982) (holding that the state's reimbursement to a guarantor who paid off a private, non-profit hospital's construction loan served a legitimate public interest); *Wright*, 468 P.2d at 330–31 (holding that the city's issuance of general obligation bonds to finance a community development plan providing for the purchase of a site and the construction of a manufacturing and processing facility that would be leased to a private corporation did not violate the constitution's public purpose requirement because it would help boost the city's failing economy); *Walker*, 416 P.2d at 252 (the Alaska State Mortgage Association provides citizens with health, safety, welfare, comfort, security and economic benefits and thus serves a legitimate public purpose); *Suber v. Alaska State Bond Comm.*, 414 P.2d 546, 552 (Alaska 1966) (recognizing that the relief and support of the poor as well as the "aiding [of] those persons ... who have suffered a substantial financial burden as a result of natural disaster" as public purposes); see also

*Wright*, 468 P.2d at 328 n. 2 (listing cases upholding municipal financing of improvement projects).

25. *Wright*, 468 P.2d at 331.

26. *Id.*

27. *City of Wasilla v. Wilsonoff*, 698 P.2d 656, 658 (Alaska 1985).

28. 172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443 (1898).

29. *Id.* at 278–79, 19 S.Ct. 187.

30. See AS 29.46.010(a)("A municipality may assess against ... *private real property to be benefited by an improvement* all or a portion of the cost of acquiring, installing, or constructing [the improvement].") (emphasis added).

31. See *Simmons v. City of Moscow*, 111 Idaho 14, 720 P.2d 197, 204 (1986) (considering safety a legitimate benefit of a special assessment).

32. See *Comtec v. Municipality of Anchorage*, 710 P.2d 1004, 1006–07 (Alaska 1985).

33. *See id.*

mentally clean, and economical source of fuel. Weber, in contrast, submitted only a tax valuation of his property indicating a net decrease in the property's value since the gas line's construction. He offered as evidence a "Public Information" printout indicating that the borough appraised his property at a value that decreased gradually from $37,800 to $32,900 for the years 1993 through 1996 but then increased in 1996 to an amount that was still less than its pre-gas-line value.

■ This evidence fails to overcome Weber's heavy burden of proof. In *Kissane v. City of Anchorage* [34] the court held that an assessment amounts to an unconstitutional taking only when it "clearly results in ... flagrant and palpable inequality between the burden imposed and benefits received...." [35] Evidence that Weber's property suffered a decrease in value is irrelevant to his takings argument absent a showing that the decrease is causally related to the existence of the gas line. Weber provides no evidence of any causal connection.

■ In addition to the tax valuation, Weber also argues that he personally does not want to access the natural gas and thus will reap no benefit from the project. But the question of benefit applies only to the property itself.[36] Weber's personal gain or loss is irrelevant to the takings issue; it is enough that he is able to access the gas line and enjoy its benefits if he so wishes.[37] Accordingly, we hold that Weber has failed to establish an unconstitutional taking.[38]

**34.** 159 F.Supp. 733 (D.Alaska 1958).

**35.** *See id.* at 737; *see also Houck v. Little River Drainage Dist.,* 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266 (1915) (holding that where state forms an assessment district, "its action cannot be assailed under the 14th Amendment unless it is palpably arbitrary and a plain abuse").

**36.** *See Kissane,* 159 F.Supp. at 737; *see also* AS 29.46.010 (permitting assessments against "private real property to be benefitted by an im-

## IV. CONCLUSION

We AFFIRM the superior court's judgment.

provement [for] all or a portion of the cost of ... constructing [the improvement]").

**37.** *See City of Glendale v. Trondsen,* 48 Cal.2d 93, 308 P.2d 1, 7 (1957).

**38.** Weber also asserts that the assessment violates equal protection. But, as the borough points out, Weber failed to raise this argument at the administrative or superior court level and thus has waived the issue. *See Nenana City Sch. Dist. v. Coghill,* 898 P.2d 929, 934 (Alaska 1995).