**William H. MILLER and Barbara J. Miller, Appellants,**

v.

**MATANUSKA–SUSITNA BOROUGH, Appellee.**

No. S–9735.

Supreme Court of Alaska.

Sept. 6, 2002.

---

Kenneth D. Albertsen, Palmer, for Appellants.

Max D. Garner, Birch, Horton, Bittner and Cherot, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

The Matanuska–Susitna Borough imposed a road improvement special assessment against each of nine lots William and Barbara Miller own in a newly formed local improvement district. The superior court rejected the Millers' administrative appeal challenging the assessment. We affirm, because we conclude that (1) the borough ordinance allocating paving special assessments to residential lots on a per-lot basis does not conflict with state law, and (2) a borough ordinance limiting special assessments to twenty-five percent of the lots' tax-appraised value does not apply to this local improvement district. We also reject the Millers' argument that they were public interest litigants who could not be held liable for part of the borough's appellate attorney's fees.

## II. FACTS AND PROCEEDINGS

The Matanuska–Susitna Borough Assembly created Suburban Country Estates Road Paving Local Improvement District No. 245

by enacting Ordinance 97–139 in 1997.[1] That ordinance provided that the cost of the improvement "shall be assessed equally against each property within the road paving local improvement district." The Millers own nine lots in this local improvement district. The Millers' lots had been zoned and platted for single-family residential development, but are undeveloped. Each of their lots had a 1997 tax-assessed value of $2,000 and a 1999 tax-assessed value of $4,000. When the final cost of the road paving project was calculated, the borough assessed $1,735.35 to property owners for each parcel of property they owned within the local improvement district; it assessed that amount for each of the Millers' nine lots.

At the public hearing on Ordinance 97–139 before it was enacted, the Millers objected to the borough's proposed per-lot method of assessment. They argued that each lot owner should pay a percentage of the paving costs commensurate with the proportional value of each lot to the total value of all lots in the local development district. After the assembly enacted the ordinance notwithstanding their objections, the Millers filed a superior court complaint seeking a declaratory judgment. Their complaint, filed in 1998, alleged that the borough had acted contrary to law when it assessed the costs on a per-lot basis and had acted arbitrarily and unreasonably when it assessed each lot equally even after it had acknowledged that the paving would not equally benefit each lot in the local improvement district.

In 1999 the Millers filed in the superior court an administrative appeal from the borough's assessment, asserting that the borough had erred in assessing the costs of the improvement equally among lot owners and that this method of assessment was contrary to law. The superior court consolidated the Millers' declaratory judgment action with their administrative appeal.

At oral argument on cross-motions for summary judgment, the parties represented to the superior court that they had agreed to proceed with the action under the Alaska Rules of Civil Procedure. But the court, concerned that the agreement "effectively jettison[ed] the limited appeal from a final assessment afforded by state law," decided to treat the case as an appeal of an administrative decision. The superior court confined its review to the evidence in the record created below plus Robert Ameen's affidavit submitted by the Millers to show that the assessed properties were unequally benefited. The superior court affirmed the borough's assessment against the Millers and awarded the borough attorney's fees and costs totaling $2,716.03.

The Millers appeal the denial of their administrative appeal[2] and the award of attorney's fees against them.

## III. DISCUSSION

### A. Standard of Review

 Because the superior court acted as an intermediate court of appeal, we independently review the borough's decision.[3] We employ the rational basis standard when reviewing questions of law that involve the borough's expertise, and when reviewing the borough's application of law to facts when that application implicates administrative expertise or involves fundamental policy determinations.[4] Under the rational basis standard, we defer to the borough's determination as long as it is

1. Matanuska–Susitna Borough Ordinance No. 97–139 (1997).

2. The Millers also submitted a second motion for summary judgment on January 10, 2000, the morning of oral argument on their first motion. Their second motion asserted a new substantive ground for summary judgment. The superior court treated their second motion as an appeal of the administrative agency decision, permitted the borough to respond, and disposed of it in the same "Memorandum and Order on Cross Motions for Summary Judgment" that the Millers are appealing to this court. The superior court concluded that the argument in the second motion had not been raised at the administrative level and therefore had been waived. The Millers do not appeal the denial of their second motion, and their briefs in our court do not raise the substantive ground they argued in their second motion.

3. *Weber v. Kenai Peninsula Borough,* 990 P.2d 611, 613 (Alaska 1999) (citation omitted).

4. *Id.* (citation omitted).

supported by the facts and has a reasonable basis in law.[5]

■ The borough's assessment determinations are presumed to be correct, and are reversed only upon a showing "of fraud or conduct so arbitrary as to be the equivalent of fraud, or so manifestly arbitrary and unreasonable as to be palpably unjust and oppressive." [6]

■ When the superior court acts as an intermediate appellate court, it has broad discretion to award reasonable attorney's fees under Appellate Rule 508(e).[7] The superior court's decision should not be disturbed unless it is "manifestly unreasonable." [8]

**B. Was the Borough's Allocation Method Contrary to State Law?**

■ The Millers argue that the borough's per-lot assessment method violates state law because AS 29.46.060(a) mandates that improvement costs be assessed against property in proportion to the benefit received.[9] In reply to the borough's argument that it adopted, in accordance with state law, a different but permissible method of allocating costs for road improvements in local improvement districts like the one at issue here, the Millers contend that there is no rational basis for the borough's per-lot assessment method given disparities in the size of the lots in their local improvement district.

Matanuska–Susitna Borough (MSB) Code § 03.28.140(A)(2) controls road paving special assessments like the Millers'. It allocates road improvement costs "on a per lot basis"—thus equally per lot—to residential lots in road special assessment districts:

ALLOCATION OF COSTS IN ROAD SPECIAL ASSESSMENT DISTRICTS.

(A) Assessments for costs of road and drainage construction and improvements shall be allocated among the parcels within the road special assessment district as follows:

 . . . .

(2) Areas zoned residential or restricted to residential use. For areas zoned residential or within subdivisions where a majority of the lots within the subdivision are restricted to residential uses under recorded conditions, covenants and restrictions, the allocation of costs shall be assessed on a per lot basis so that each lot is assessed the same amount.

Subsection .140(A)(2) is one of the borough code provisions describing the borough's procedures for assessing improvement costs and creating local improvement districts within the borough.[10] Subsection .140(A)(2) governs road improvement special assessments and therefore encompasses road paving assessments. Accordingly, we must decide whether subsection .140(A)(2) contravenes state law governing special assessments.

Alaska Statutes 29.46.010 [11] and .020 [12] respectively permit municipalities to assess private property benefited by improvements

---

5. *Id.* (citation omitted).

6. *City of Wasilla v. Wilsonoff,* 698 P.2d 656, 658 (Alaska 1985) (quoting *Kissane v. City of Anchorage,* 159 F.Supp. 733, 737 (D.Alaska 1958)).

7. *Rosen v. State Bd. of Pub. Accountancy,* 689 P.2d 478, 482 (Alaska 1984).

8. *Cook Inlet Pipeline v. Alaska Pub. Util. Comm'n,* 836 P.2d 343, 354 (Alaska 1992).

9. AS 29.46.060 reads in pertinent part: "(a) At any time after approval of an improvement plan, the governing body shall assess the authorized percentage of the cost against property in the district included in the plan in proportion to the benefit received. . . ."

10. *See* MSB Code § 03.28.010–.180.

11. AS 29.46.010 reads in pertinent part: "(a) A municipality may assess against . . . private real property to be benefited by an improvement all or a portion of the cost of acquiring, installing, or constructing capital improvements."

12. AS 29.46.020 reads in pertinent part:

(a) A municipality may prescribe by ordinance the procedures relating to creating special assessment districts, making local improvements, levying and collecting assessment, and financing improvements

 . . . .

(c) To the extent that a municipality does not prescribe a procedure for special assessments as permitted by this section, the municipality

and to adopt procedures for creating local special assessment districts. Alaska Statute 29.46.020(c) requires municipalities such as the borough to comply with the special assessment procedures set out in AS 29.46.030–29.46.100 if the municipality does not prescribe a procedure for special assessments as permitted by section .020.[13] The borough chose to prescribe such procedures. By enacting MSB Code § 03.28.140(A)(2),[14] the borough exercised the authority AS 29.46.020(a) granted to it. It consequently substituted its per-lot method of assessing a specific class of improvement costs—for road improvements benefiting residential lots—for the proportional benefit assessment method the legislature generally adopted in AS 29.46.060(a).[15] It therefore "prescribed a procedure for special assessments as permitted by this section," [16] exempting itself from having to comply with AS 29.46.060(a) with respect to road improvement special assessment districts.

Although there are other possible ways to assess landowners in a local improvement district,[17] the per-lot method the borough chose for road improvements benefiting resi-

dential lots is presumptively valid.[18] Accordingly, MSB Code § 03.28.140(A)(2) does not violate AS 29.46.020 or .060.

## C. Did the Millers Show that the Per-Lot Method Is Irrational?

■ The Millers argue that the factual record does not support the borough's implicit conclusion that each lot benefited equally; they consequently argue that this court should overturn the assessments. To prevail, the Millers had to overcome the presumption of correctness that attaches to the borough's conclusion that the paving project has conferred an equal benefit on their land.[19] To do so, the Millers had to show that the benefit to their property was grossly disproportionately low compared with the benefit conferred upon the other assessed properties.[20]

In *Kissane v. City of Anchorage,* a territorial district court held before statehood that benefit to property is not limited to the immediate increase in property value to the landowner.[21] The district court held that costs could be assessed to a landowner for

---

shall comply with the special assessment procedures set out in AS 29.46.030–29.46.100.

13. AS 29.46.020(c).

14. MSB Code § 03.28.140(A) reads in pertinent part: "(2) ... For areas zoned residential or within subdivisions where a majority of the lots within the subdivision are restricted to residential uses under recorded conditions, covenants and restrictions, the allocation of costs shall be assessed on a per lot basis so that each lot is assessed the same amount."

15. AS 29.46.060 reads in pertinent part: "(a) At any time after approval of an improvement plan, the governing body shall assess the authorized percentage of the cost against property in the district included in the plan in proportion to the benefit received...."

16. AS 29.46.020(c).

17. The borough itself generally follows the proportional benefit method for assessing costs other than costs in road special assessment districts. *See* MSB § 03.28.080(A) (providing generally for imposition of special assessment costs "in proportion to the benefit received"). If MSB § 03.28.140(A)(2) does not apply, per MSB § 03.28.140(A)(1), the borough assesses road improvement costs in special assessment districts either by lot size or frontage length.

18. *City of Wasilla v. Wilsonoff,* 698 P.2d 656, 657, 658 (Alaska 1985) ("We agree with the city that its special assessment determination carries with it a 'presumption of correctness.' 'If the apportionment of special assessments and the question of benefits are matters upon which reasonable men may differ, the determination by the municipal authorities will be sustained by the courts.' ") (quoting in part 2 CHARLES ANTIEAU, MUNICIPAL CORPORATION LAW § 14.46 (1985)); *see also Weber v. Kenai Peninsula Borough,* 990 P.2d 611, 614 (Alaska 1999) (reiterating presumption that municipal legislative assessment decisions are valid and applying presumption to creation of assessment districts).

19. *See Wilsonoff,* 698 P.2d at 657.

20. We stated in *Wilsonoff* that "[t]his presumption favoring a city council's assessment determination concomitantly places a heavy burden of proof on the challenging party." *Id.* at 658. We then approvingly quoted Professor Antieau: "[A] property owner seeking to overturn a special assessment against his property has the burden of proving that the assessment was *grossly* beyond benefit, disproportionate or otherwise illegal." *Id.* (quoting 2 CHARLES ANTIEAU, MUNICIPAL CORPORATION LAW § 14.46 (1985) (emphasis added in *Wilsonoff*)).

21. 159 F.Supp. 733, 738 (D.Alaska 1958).

increased public parking even though his land was zoned for business but used only for residential purposes. In *City of Wasilla v. Wilsonoff,* we held that property benefited from installation of a water main because it provided a near-by fire hydrant, even though the landowner testified that it would be difficult to hoist a fire hose up an embankment to reach her house and that fire insurance rates would not decrease for twenty years.[22] Similarly, in *Weber v. Kenai Peninsula Borough,* we concluded that property benefited from installation of a gas line even though the landowner had no intention of connecting to it.[23]

Here, the superior court concluded that the record from the October 27, 1996 public hearing on the local improvement district contained ample testimony by residents identifying the benefits from the paving project. For example, residents testified that reduced vehicle wear and tear and health benefits from reduced dust would outweigh the cost of the project. In addition, tax-assessment records indicate that the value of each of the Millers' lots increased by $2,000 during the two years following the approval of the local improvement district. Furthermore, the superior court correctly observed that "[i]f the [Millers] ever developed their lots, they or their successors in interest would enjoy the benefit of cleaner air, smoother travel, and increased value on par with all of the other landowners in the [local improvement district]."

The Millers supplemented the agency record with the affidavit of real estate appraiser Robert Ameen. He stated:

4. Unless the various properties within a paving local improvement district are each valued identically, they usually do not benefit equally from the road being paved.

5. A higher-valued property receives a greater benefit from the paving than does a lesser-valued property. The larger the difference between the values of the various properties within the local improving district, the greater the disparity between the benefit received by each property. Ac-

cordingly, if the cost of paving is to be allocated among the properties in accordance with the benefit received, the cost should be allocated proportionately based upon the value of each individual property.

6. It is my understanding that the Borough in this case allocated the costs of paving on a pro-rata basis, assessing each lot an identical portion of the total cost irrespective of the value of the individual property. Such an assessment is disproportionate.

This evidence does not rebut the presumption of correctness that attaches to the borough's decision or the record evidence that paving substantially benefited the Millers' parcels. Ameen's affidavit merely concludes that paving will cause the market value of properties of greater value to increase more than the market value of lower valued properties. It does not rebut the conclusion that the Millers' lots will receive a substantial benefit because paving will reduce dust and vehicle wear and tear and will increase the monetary value of each lot. Neither the evidence before the borough nor the Ameen affidavit undermines the borough's conclusion that the Millers have benefited from the paving and that when and if they develop their property they will benefit on par with the other property owners in the local improvement district.

■ The Millers argue that the superior court could not properly deny their cross-motion for summary judgment in reliance upon the $2,000 increase in the post-improvement tax-assessed value of their property. They contend that the borough was required to submit additional evidence proving that the increased tax valuation of their lots reflects a corresponding increase in their fair market value. They also argue that the borough has not shown that any increase in value is attributable to the paving. But this argument misconstrues the procedural posture of the Millers' superior court case. Relying on our decision in *Balough v. Fairbanks N. Star Borough,*[24] the superior court treated their case as if it were an appeal of

22. 698 P.2d 656, 658 (Alaska 1985).

23. 990 P.2d 611, 616 (Alaska 1999).

24. 995 P.2d 245, 256 (Alaska 2000).

an agency decision. The court analogized the borough's assessment determination to an agency decision and the Millers' lawsuit to an appeal from that decision. Because the superior court treated the Millers' action as an administrative appeal, the civil rules did not require the borough to introduce additional evidence to demonstrate equal benefit to the properties. The relevant evidentiary record in the superior court was the borough record and the supplemental affidavit of Ameen.

The superior court did not err in concluding that the Millers did not overcome the borough's presumptively correct finding of equal benefit.

### D. Did the Twenty–Five Percent Limit Imposed by MSB Code § 03.28.080(B) Apply to these Assessments?

■ The Millers argue in their opening brief that their assessments were illegal because they exceeded the twenty-five percent limit imposed by MSB Code § 03.28.080(B).[25] Citing AS 29.46.020(c), the Millers contend that state law requires a borough to either follow state procedure for special assessments or create its own procedure. They argue that because the borough, by enacting subsection .080(B), adopted a procedure that proscribes special assessments exceeding twenty-five percent of the property tax value, the borough had to adhere to this limitation. The borough argues in response that it permissibly adopted a different procedure when the assembly enacted Ordinance 99–034. That ordinance confirmed the Suburban Country Estates Road Paving Local Improvement District and exempted that local improvement district from the twenty-five percent cap.[26] The Millers' reply brief does not address the cap issue.

25. MSB Code § 03.28.080(B) provides: "The total amount of assessments for an improvement may not exceed the allowable cost of the improvement under A.S. 29.46.110. An assessment may not exceed 25 percent of the assessed value for real property taxation of the property assessed."

26. Matanuska–Susitna Borough Code Ordinance No. 99–034 (1999).

The superior court agreed with the borough. It held that Ordinance 99–034, which specifically permitted assessments exceeding the limit set by subsection .080(B), was "a subsequent legislative act" that released the borough "from the constraints of a prior legislative act."

■ The superior court was correct. Boroughs act as legislative bodies when they enact ordinances or code provisions.[27] In its legislative capacity, the borough assembly enacted procedures for special assessments. One such enactment was MSB Code § 03.28.080(B), which imposed the twenty-five percent assessment limitation. But another was Ordinance 99–034, which superseded the existing procedure with respect to this local improvement district.

In *Jefferson v. City of Anchorage,*[28] the Anchorage City Council enacted an ordinance increasing the mayoral salary at the beginning of the next mayoral term. This new ordinance contravened an existing ordinance that only permitted a salary increase within thirty days after a mayoral term began. We concluded that there is no illegality when a new legislative provision of equal dignity and authority supplants prior legislation.[29] That holding controls here.

These assessments were not subject to the twenty-five percent limitation imposed by subsection .080(B).

### E. Are the Millers Public Interest Plaintiffs Who Should Not Be Assessed Attorney's Fees?

■ A superior court sitting as an intermediate appellate court considers an award of appellate attorney's fees under Alaska Rule of Appellate Procedure 508(e).[30] This

27. *Griswold v. City of Homer,* 925 P.2d 1015, 1019 & n. 3 (Alaska 1996) (citing *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974)).

28. 513 P.2d 1099, 1101 (Alaska 1973).

29. *Id.* at 1102.

30. Appellate Rule 508(e) states:
Attorney's Fees. Attorney's fees may be allowed in an amount to be determined by the court.

rule gives courts broad discretion in awarding fees.[31] Such fee awards must be justified and reasonable.[32]

■ The Millers argue that the superior court erred in awarding attorney's fees to the borough because the Millers were public interest litigants, who were therefore exempt from attorney's fees.[33]

■ "It is an abuse of discretion to award attorney's fees against an unsuccessful public interest plaintiff who raises a claim in good faith."[34] A four-part test determines public interest litigant status: (1) Is the case designed to effectuate strong public policies? (2) If the plaintiff succeeds, will numerous people receive benefits from the lawsuit? (3) Can only a private party have been expected to bring this suit? (4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involves only narrow issues lacking general importance?[35] "We review a trial court's determination of a litigant's public interest status under the abuse of discretion standard. Such an abuse is regarded as present only where the trial court's decision appears to be manifestly unreasonable or motivated by an inappropriate purpose."[36]

The superior court concluded that the Millers did not qualify as public interest plaintiffs because they "had a significant financial stake in this action that would only have accrued to them." The Millers do not argue persuasively to the contrary. Only they would have directly benefited had they persuaded the superior court to impose their preferred assessment scheme on the borough. Had they succeeded, other landowners in the local improvement district would have been forced to shoulder greater costs. The Millers' appeal was in their private interest.

■ The Millers also briefly argue that the award was excessive because it gave the borough thirty percent of its actual fees. The Millers do not adequately brief this argument,[37] and it is unavailing in any event. The superior court gave a well-reasoned explanation for its attorney's fees award. It explained that the Millers' "procedural approach to the case and their dual filings took this matter over unnecessary ground raising both parties' fees in the process." The court also found that the Millers' appeal was "knowingly risky" in that they attempted to have "their assessment preference legislated ... by the court" with "almost no legal claim" to do so. There is no reason to think the superior court abused its discretion in awarding attorney's fees against the Millers.

## IV. CONCLUSION

We AFFIRM the superior court order denying the Millers' appeal from the borough's final assessment. We also AFFIRM the judgment awarding attorney's fees and costs to the borough.

---

If such an allowance is made, the clerk shall issue an appropriate order awarding fees at the same time that an opinion or an order under Rule 214 is filed. If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.

31. *Agen v. State, Dep't of Revenue*, 945 P.2d 1215, 1221 (Alaska 1997).

32. *Carr–Gottstein Props. v. State*, 899 P.2d 136, 148 (Alaska 1995).

33. The Millers mistakenly cite Civil Rule 82 rather than Appellate Rule 508.

34. *Carr–Gottstein Props.*, 899 P.2d at 147 (citations omitted).

35. *Id.* (citations omitted).

36. *Valley Hosp. Ass'n, Inc. v. Mat Su Coalition for Choice*, 948 P.2d 963, 972 (Alaska 1997).

37. *See Wirum & Cash, Architects v. Cash*, 837 P.2d 692, 713–14 (Alaska 1992) ("Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal.") (citations omitted).